## Insurance Company *versus* Yard.

1. In assessing property for county, and also for state purposes, it is not necessary that there should be a *separate assessment* for *state*, and for *county purposes*.   The form of assessment is not material; and though the form consists of two columns, one headed *county*, and the other *state*, and in the first column the amount of the individual's *real* estate only is stated, but in the second column is stated moneys at interest, mortgages, and real estate, this is substantially a valuation for county rates as well as for state purposes.

2. It is not necessary that notice of the *rate per cent.* of assessments in the county of Philadelphia should be given to taxables before the day fixed for appeal.

3. A general omission by assessors of *some* of the subjects of taxation does not render void the assessment of particular persons as to other subjects of taxation;—nor does it avoid the whole assessment.

THIS case came up from the *Nisi Prius*.

This was an action of assumpsit for money had and received, brought in the *Nisi Prius* to July Term, 1845, No. 201, by The Philadelphia Contributionship for the Insurance of Houses from Loss by Fire against Edmund J. Yard, collector of taxes for the county of Philadelphia, to recover back the sum of $2111.43, paid by plaintiffs to defendant, under constraint of a distress upon their goods, and under protest and notice.   The suit being called for trial, a case stated was submitted to the court.

It was agreed that the case stated for the opinion of the court was to be considered as if the facts had been found by a special verdict; and the judgment of the court thereupon to be subject to removal to the court in banc, in the usual method.

It was, *inter alia*, stated, in the case agreed upon: That, on the 31st day of October, 1844, the commissioners of the county of Philadelphia issued their precept to the assessors of the county, directing them to make assessments.

The assessors, under the direction of the said precept, addressed certain inquiries to the taxables.

No inquiry seems to have been made of the taxables as to their property in banks, insurance, or other companies incorporated by the state of Pennsylvania, nor of their loans to any county, city, borough, or district *in the state*, otherwise than in the foregoing inquiries.

On the 15th day of February, 1845, the county commissioners published a statement of the value of property assessed for state and county purposes, and of trades, &c., and moneys at interest, as returned by the assessors.   It was stated that "so much of said Act (29th April, 1844) as provides that the whole amount of taxes assessed in each ward and township shall be furnished, cannot be complied with, so far as regards the county tax, inasmuch as the

[Insurance Co. *v.* Yard.]

*rate per centum* has not been fixed by the county board. The statement was dated February 15, 1845.

The assessors, so far as appears, took an account for *state* taxation only, of such of the objects referred to in their precept as the state assesses and collects by or through the county commissioners, assessors, and collectors, and not of any of the objects which the state assesses or collects by and through other agents, viz., the cashiers or treasurers of incorporated companies, or of counties, cities, boroughs, or districts. The amount of the state tax for 1845, received by the state treasurer from the county of Philadelphia, through the cashiers or treasurers of the institutions last referred to was, from

| | |
|---|---:|
| Banks, insurance, and other companies, | $47,077.22 |
| Loans of the corporations of Phila. county, | 11,826.51 |
| | $58,903.73 |

The form in which the assessment was made by the assessor appears to have been as follows: one column of the assessment is headed *county* and the other *state.* In the county column is inserted the assessment for office or occupation, real estate, horses. In the state column is inserted mortgages, or moneys at interest, real estate again, that object being liable to both state and county tax. Mortgage and moneys at interest are not introduced into the *county* column, as being valued or assessed for county purposes.

### Form of Assessment.

Extract from assessment books of Dock Ward, for 1845 :—

| Philadelphia Contributionship Comp. : | County. | State. |
|---|---:|---:|
| Money at interest at 5 per cent., | | $ 5,670 |
| Mortgages at 5½ per cent., | | 15,000 |
| " " 6 " | | 401,616 |
| For their estate, | $25,000 | 25,000 |

N. B.
$ 5,670
15,000
401,616
——————
$422,286

½ per cent. on this is $2111.43, the amount of tax in controversy.

No notice was given by the assessors to the taxables, or by the commissioners to the assessors, of the *rate* of assessment upon any description of personal property.

The notice given by the assessors of Dock ward to the defendants, specified the 20th of March, 1845, as the day of appeal, which was between two and three months before the rate was fixed. It was a notice that the defendants were rated for real estate,

$25,000; money at interest, $5670; money loaned on mortgage, $401.616.

On the 5th of May, 1845, the county commissioners submitted to the county board a schedule of the probable liabilities of the county for the year commencing July 1, 1845, and which schedule closes as follows :—

" The amount of rates upon which the per centum is to be levied, is $97,500,000."

On the 13th day of May, 1845, at a meeting of the county board, the following resolution was adopted :—

" Resolved, That the county commissioners be requested to furnish the county board the corrected amount of valuation of rates on real estate, the amount of personal tax assessed, the corrected amount of furniture, carriages, moneys at interest, as adjusted since the day of appeal, and all other subjects made taxable for county purposes for each ward, district, and township, in the city and county of Philadelphia, by the Act of 29th April, 1844, entitled ' An Act to reduce the state debt, and to incorporate the Pennsylvania Canal and Railroad Company.' "

The commissioners replied, suggesting their inability to give accurate answers to the queries proposed, because the duplicates of the assessments were unfinished, and furnishing a statement of the assessment of real estate, horses and cows, furniture, carriages, emoluments of office, watches ($5852), and moneys at interest.

*June* 12.—It was resolved, " That the rate of taxation be fixed at fifty cents in every one hundred dollars of the valuation of property taxable for county purposes."

The defendant, as collector of taxes for Dock ward, presented to the plaintiffs a bill for $2111.43, being the county tax of·fifty cents on the hundred dollars, upon $422,286 mortgages and moneys at interest.    The plaintiffs refused to pay this county tax, except under compulsion; and the collector having communicated his determination to distrain the chattels of the plaintiffs therefor, the plaintiffs paid the same under protest and notice, and brought the present action to recover the same back.

The question for the opinion of the court is, whether under the foregoing facts the plaintiffs were liable in law to pay the said sum of $2111.43, claimed by the defendant as a county tax as aforesaid.

If the court shall be of opinion that the plaintiffs were not liable to pay the said sum, then judgment to be entered for the plaintiffs for the said sum with interest, from the date of payment.

If the court shall be of opinion that the plaintiffs were bound to pay any portion of said tax, then judgment to be entered for plaintiffs for the difference between such portion and the amount paid, with interest from the date of the payment aforesaid.

If the court shall be of opinion that the plaintiffs were legally

[Insurance Co. *v.* Yard.]

bound to pay the said sum, then judgment to be entered for the defendant.

The case was argued by *H. Binney, jun.*—Some of the provisions of the Act of 1834, relative to county rates and levies, have been altered by subsequent Acts, as by a supplement of the 31st March, 1836, and more extensively by the Act of 15th May, 1841. Within four weeks after the general election, 1841, the commissioners are to issue their precept to the assessors, requiring them to make out and return a list of taxable property and a valuation of it, the valuation to continue till the next triennial assessment. *Act of 15th May*, 1841, sec. 6.

2. The manner of assessment is prescribed by the same Act, giving the commissioners the power to change the valuation, and repealing the 3d and 6th sections of the Act of 15th April, 1834, in regard to fixing a uniform standard of value by the assessors. *Act of* 1841, sec. 4.

3. The assessors and assistant assessors, on receipt of the precept for the triennial assessment, must proceed to take an account of real estate. 2. Horses and cattle. 3. All offices of profit and occupations.

4. When the returns of the valuation are rectified, the commissioners must proceed to assess the proportion of each ward, &c.

5. When the proportions of the several wards are ascertained, the commissioners shall cause transcripts of the assessments to be made and transmitted to the assessors on or before the 2d Monday of April following, together with a *statement of the rate per cent.* and the day of appeal fixed by them. Sec. 8.

6. On receiving the transcript, the assessors are to give *five days' notice, before the day of appeal,* to each taxable, of the amount or sum for which he stands rated, and the rate per cent. of such amount, and of the time and place of such appeal.

7. After the appeals are heard, the commissioners are to cause duplicates of the assessments to be made, and to issue their warrants to the collectors.

On 10th April, 1834, was passed an Act for erecting a County Board: *Pam. Laws* 266. The fifth section of the Act constitutes the members of the Senate and House a county board, *without whose consent and approbation* it shall not be lawful for the commissioners of the county of Philadelphia to lay any tax or county rate and levy; meetings of the county board may be called by the commissioners when they deem it expedient, and they may be convened at Harrisburg during the session of the legislature: *Acts of* 1842, p. 236. The consent of the county board is necessary to the exercise of the power of laying a tax by the commissioners; that is, of assessing or establishing the rate.

[Insurance Co. *v.* Yard.]

The 32d section of the Act of 29th April, 1844 (*Acts* p. 486), prescribes objects of taxation, including *all shares of stock in any bank, institution, or company,* now or hereafter incorporated by, or in pursuance of any law of this Commonwealth, or of any other state or government, and on all shares of stock or weekly deposits in any unincorporated saving fund institution, and on *all public loans or stocks whatever,* &c., for *all state or county purposes whatsoever.*

This Act contains no provision for laying a county tax, but the effect of it is to place them under the county rate and levy Act, and the Acts supplementary. When the commissioners resort to those objects for county purposes, they must do it according to those Acts.

By the 32d section of the Act of 29th April, 1844, the tax upon certain objects of taxation for state purposes, viz., upon stocks of banks, &c., is to be assessed in a peculiar manner without coming under the notice of the county commissioners or of the ward assessors; but all is taxable *for county* purposes. But although the county commissioners are not required to assess stocks for *state purposes,* yet when a county tax is levied on personal property, these stocks and loans must be valued and assessed by the assessors. And *all* of it must be assessed.

But the assessors in question did not take account of all such property liable to taxation for county purposes. They took an account only of such of the objects as are to be assessed for state purposes by or through the county commissioners, and not of any of the objects in that section which the state assesses and collects through other agents, viz., cashiers or treasurers. They omitted to make any inquiry of any taxable inhabitant as to his property in banks, or other companies, or of his loans to any county or district. A county tax upon the new objects of taxation mentioned in the 32d section of the Act of 1844, does not seem to have been in the view of the assessors. The inquiries seem to have been directed to a valuation for *the state tax, and not for a county tax.*

No notice was given by the assessors to the taxables of *the rate* of assessment.

The report by the commissioners to the county board of the amount of rates on which the percentum is to be levied, the amount of *mortgages or moneys at interest* was not included; and the county board by their resolution of 12th June, 1845, did not consent to a tax of 50 cents upon the amount of valuation reported by the commissioners, but they applied it to the returns of valuation made in the manner directed on its taxation for *state* purposes, omitting perhaps a greater amount of property made taxable for county purposes.

This rate was applied by the commissioners to the returns of

[Insurance Co. *v.* Yard.]

valuation, in manner as above stated, without giving any notice of *the rate*, or of the day and place of appeal.

It was contended that the assessors made no valuation for county purposes, of the property on which the tax was levied. There was no assessment of the rate or proportion of this tax by the county commissioners.

No notice was given before the time of appeal, of the tax thus assessed by the county board, nor until demand by the collector.

When a mode in which a tax for county purposes shall be laid is prescribed by law, a departure from that mode will render the tax illegal: 14 *Mass. Rep.* 177; 3 *Id.* 429; 1 *Pick.* 482; 3 *Greenl.* 327; 21 *Pick.* 67.

Those assessing the tax must have the citizen notified of what is material for him to know, or to what estate he is taxed, and for what others who are taxable are taxed; if not, he may resist the taxation: 13 *Vermont*, Howard *v.* Shumway; 7 *Conn.* 550; 3 *Greenl.* 327; 2 *B. & C.* 713; 4 *D. & Ryl.* 223.

Any material omission of objects of taxation will vitiate the rest: 2 *Curteis* 480–499; 3 *Phillimore* 640; 6 *Metcalf* 497–512; 14 *Pick.* 362; 15 *Vermont*, Henry *v.* Chester; 7 *Barr* 147; 2 *Curteis* 887.

The question can be raised in an action for money had and received: 15 *Vermont* 460; 14 *Mass.* 272.

*McCall*, for defendant in error, with whom was *Tarr*.—The objections to the validity of the tax are—1. That the assessors made no valuation of the property on which the tax was levied for *county* purposes, although they made it for *state* purposes. The record does not present any evidence that mortgages and moneys at interest were not valued for *county* purposes. The law does not require separate columns in the assessors' book for property assessed for county and state purposes, or any form at all; and does not require property to be separately assessed for county and state purposes, as was the case in Massachusetts.

2. It is objected that there was no assessment made by the county commissioners, but that the tax was assessed by the county board, who had no power to assess a tax, but only to consent to and approve an assessment by the county commissioners. The language of the 8th section of the Act of 10th April, 1834, is, "whenever the county board shall authorize and approve of the laying of any tax," &c. The law was, in this case, substantially complied with. It made no difference in substance whether the county board in the first instance fix the rate, and the commissioners adopt it; or whether the commissioners first fix the rate, and the county board afterwards approve. In either case, the assessment is made by the commissioners.

3. It is objected that no notice was given before the time for

[Insurance Co. *v.* Yard.]

appeal, as to *the rate per cent.*   Notice of the rate was not essential to the validity of the tax.   The Act of 10th April, 1834, provided. that no meeting of the county board should be held during the session of the legislature; it was impossible to give notice of the rate before appeal, there being at the time no power to convene the board at Harrisburg.   The Act of 1842 removed the prohibition, but did not make it imperative to convene the board at Harrisburg.   But such notice was not required by the Act of 1834; under that Act there is no appeal from the *rate,* but only from the *valuation.*   The object of the appeal is to afford relief from excessive valuation, and not from an alteration in the rate per cent.

4. It is contended that the assessor made no valuation of the stock in banks, or institutions or companies incorporated by the . the laws of this state, and that their omission to do so is fatal to the validity of the tax.   The omission to tax an individual who may be liable, does not render the *whole taxation* illegal; and a tax is not rendered void by the omission of the assessor to tax *all* the property of an individual which is liable to taxation: 21 *Pick.* 75; 4 *Metc.* 599; 6 *Id.* 497.

If the party was entitled to a remedy, it was by appeal.

It is a misdemeanor in an assessor to omit or refuse to assess any tax required by law; and should not the public remedy be alone looked to?

The opinion of the court was delivered February 2, 1852, by

Coulter, J.—A case is stated for the purpose of determining whether the plaintiff in error can recover back from the collector of taxes of the city and county, the amount of $2111.43 of taxes assessed upon it, and paid under an impending distress and upon. protest.   An ingenious and searching argument was submitted by the counsel for the plaintiff in error, drawn from decisions in some of the Eastern States, and from adjudged cases in the English Ecclesiastical Courts.

But every independent state has something of idiosyncrasy in its primary and constituent principles, which form the basis of government; and the practical application of those principles is regulated by the habits, manners, and customs of the people. · In the early stages of our jurisprudence, the assessment of taxes on unseated real estate was controlled in our courts by such rigid technical rules, that the result of that kind of tax was in a great measure defeated.   This produced the statute of 1815, which adopted a reasonable rule, and to which the courts conformed. Our primary officers, such as assessors and collectors, come annually from the body of the people.   Honesty and fair intentions towards their fellow citizens are deemed sufficient to compensate for the want of technical book-learning.   If they do what is substantially just, and what will enable the citizen to guard against

oppression in the mode pointed out in the law, and what will enable him by appeal to the proper tribunal to guard against inequality between himself and those in like circumstances—all is performed which is just and necessary to give him the full benefit of the laws.

The assessor propounded to the plaintiff the inquiries prescribed in the forms furnished him, and from the answers given by the plaintiff in error he made his assessment. But it is alleged that in the assessment there were two columns, one for the state valuation, and the other for the county; and that in the column for the county there was only the valuation of the real estate, whilst in the column for the state was "the valuation of money at interest and mortgages and the real estate." This we think, notwithstanding the cases cited, was of no moment. The cases cited depended no doubt upon some statutory peculiarities in Massachusetts, which required the different kinds of assessments to be kept distinct, separate, and apart. In our system, the assessment for county rates is made the basis of the state assessment. Both are made by the same person, under the same authority and commission; and such a thing as a different value being imposed for county rates and for state taxes is unknown in our practice, and would be an anomaly. There is nothing in the statute which requires that the assessments should be made separate and apart. The assessor puts the valuation of the real estate in both columns, but bonds and mortgages are put only in the state column. It is all the same paper, made and returned by the same officer, where the valuation must necessarily be the same; and substantially, even if not technically, it was a valuation for county rates. Many provisions in our statutes, regulating the imposition of taxes, must be considered directory merely. Some are doubtless conditions, such as those which are intended to secure an equality of taxation or burdens among the citizens; that is, that the citizen may know for what he is taxed, know his valuation, and have notice of the time and place of appeal. All these were present here. It is contended, however, that he had not notice of the rate per cent. That, however, could have done him neither good nor harm. It seems that owing to some provisions of the law requiring the county board to meet at Harrisburg, the rate, which must be fixed by the county board and the commissioners, could not be adjusted until after the time when notice of valuation and time of appeal was required to be given. But the rate could not be altered on appeal; *that*, when fixed, was uniform and general, and must stand as fixed, operating alike on all. The county board and the commissioners did agree on the rate. It is true, as contended, that when the legislature transcend the power delegated to them by the constitution, this court will arrest its unauthorized action. And if the learned counsel had shown that the commissioners and

[Insurance Co. *v.* Yard.]

county board had imposed taxes for a purpose not authorized by law, there might have been some appositeness in the argument. But for a mere technical deviation in the exercise of acknowledged power, we do not perceive its force.

The other branch of the argument we cannot regard with much favor. There may have been some things omitted in the city and county of Philadelphia that year, which were liable to taxation. If to the amount specified in the argument of the counsel for plaintiff in error, it was quite a loss both to the city and county, and also to the state. But if they were unjustly deprived of a portion of their dues, that is not a good reason why they should lose the whole. It is true that taxation ought to be assessed equally on all things liable to assessment; thus falling, like the dew, equally upon all. There have been omissions, and there will be again. In England, the assessment of church rates has grown up into a regular system in the course of centuries, and church offices are generally stable in their tenure, and the occupants well versed in their routine of duty. The decisions of the ecclesiastical court, which declared a church rate void because it had not been assessed upon all things liable to assessment, may have been, and no doubt were right enough, according to their system; and would produce little, if any inconvenience. But in this state, of late, objects of taxation are searched after and multiplied every year, and sometimes varied and shifted, so that omission may readily occur. But if an omission was made of one inconsiderable, or even considerable class, ought that to render the whole assessment void? We think not. Such a decision would cripple the operations of the county and state, and do no good to anybody, except those who derive good from general inconvenience.

The plaintiff in error did not appeal, which he had a full opportunity to do, but chose to rely upon the irregularities noticed. We think they cannot avail him, and that the judgment below was right.           Judgment affirmed.