# Pardee et al., Appellants, *v.* Schuylkill County et al.

*Appeals—Moot question—Question of general interest.*

1. While a moot question will ordinarily not be decided, this rule is not to be applied where the point raised is of great future importance to the public, its officials and taxpayers generally.

*Public officers—Performance of duty—Discretion—Presumption —Approval of action of others.*

2. Public officials are vested with a reasonable discretion in adopting such necessary and appropriate methods as will enable them to perform a duty imposed upon them, if there is no statute indicating how they shall proceed.

3. In the absence of any averment to the contrary, public officials will be presumed to have acted, and to intend to act, in accordance with their duty.

4. A public official who approves and acts upon the report of others selected to assist him in the performance of duty, necessarily adopts the conclusions he thus approves, and becomes personally responsible for all the results flowing from his so doing.

*Taxation — Equity — Taxing authorities — Parties — Statutory remedy.*

5. Equity is without jurisdiction to restrain taxing authorities, unless there is an absence of power, or disregard of the Constitution or laws.

6. Where there is a duty to assess property for taxation, and the method to accomplish this purpose is legal, the statutory remedy, if any, is the only one open to a complaining taxpayer.

*Appeals—Hearing several appeals together—Tax assessment.*

7. The court has power, under proper circumstances, to hear together a number of appeals from tax assessments.

*Taxation—Assessments—Custom—Undervaluation—Remedy.*

8. A custom of assessors, to undervalue property, would be no defense to an action to compel them to perform their duty, or to an indictment against them for failing so to do.

Argued January 4, 1923.  Appeal, No. 208, Jan. T., 1923, by plaintiffs, from decree of C. P. Schuylkill Co., Nov. T., 1922, No. 2, dismissing bill in equity, in case of Calvin Pardee et al. v. Schuylkill County, Wm. R. Adamson et al., Commissioners.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Bill in equity for an injunction.  Before BERGER, J. The opinion of the Supreme Court states the facts. Bill dismissed.  Plaintiffs appealed.

*Error assigned* was decree, quoting it.

*Cyrus G. Derr,* with him *John F. Whalen, Wesley K. Woodbury* and *D. W. Kaercher,* for appellants.—Under the system of taxation established by the legislature of Pennsylvania, an assessment duly made by assessors, chosen by the people and acting under sanction of an oath, is the first step, and an imperative prerequisite to

validity; and the alleged triennial assessment in this case, based on valuations made by agencies other than the assessors and substituted for the valuations returned by the assessors, is a nullity.

The remedy to have such alleged triennial assessment declared a nullity, is a bill in equity: P. & R. Coal & Iron Co. v. Co. Com'rs, 229 Pa. 460; Banger's App., 109 Pa. 79.

Where as in this case numerous taxables are similarly aggrieved, they may join in and have relief by a bill in equity instead of resorting to a multiplicity of appeals: Riley v. Penna. Co., 32 Pa. Superior Ct. 579; Cook v. Carpenter, 212 Pa. 165.

*Arthur L. Shay,* with him *C. A. Snyder* and *E. D. Smith,* for appellee.—The presumption is that an official has performed his duty: Hillside Coal & Iron Co., 14 Pa. Dist. R. 485.

The board may employ other parties to furnish information on values: Carlin v. Coxe, 274 Pa. 38.

When an assessment is excessive, the proper remedy is by appeal or application to the county commissioners, to reduce the assessment: Summit Grove Assn. v. Boro. School Dist., 12 W. N. C. 103; Biltz v. Boro., 3 Pa. C. C. R. 412; Chandler v. Gardner, 2 Pa. C. C. R. 407; Hughes v. Kline, 30 Pa. 227; Stratford v. Paper Mills Co., 257 Pa. 163; Carlisle School Dist. v. Hepburn, 79 Pa. 159; Hewitt's App., 88 Pa. 55.

A statutory remedy is an adequate remedy at law and may be interposed against a proceeding in equity on the same subject-matter, at any time, even on final hearing: Bank of Ky. v. Bank, 1 Par. Eq. Cases 180; Creasey v. City of York, 28 York Co. L. J. 203; Brower v. Kantner, 190 Pa. 184; Warrington v. Trust Co., 274 Pa. 80; Pittsburgh A. & M. Ry. v. Twp., 252 Pa. 155; Davison v. Erie, 274 Pa. 523.

OPINION BY MR. JUSTICE SIMPSON, January 29, 1923:

Appellants, who are citizens, property owners and tax-payers of Schuylkill County, filed in the court below a bill in equity seeking to enjoin the county, and the county commissioners, sitting as a board to "revise, raise and equalize the valuation of all property" returned by the local tax assessors, "from in any wise proceeding upon [the commissioners'] . . . . . . triennial assessment for 1922, and from doing anything in furtherance thereof." Defendants demurred, the bill was dismissed and plaintiffs appealed.

The bill avers that the local assessors violated their oaths of office, in that, instead of obeying the statutory requirement to assess and value the taxable properties in their districts, "at the rate or price [at which they could be sold], after full public notice," in fact assessed them in some cases at only 15 per cent of that valuation, in others at 30 per cent and in still others at 50 per cent thereof; that the only right which the county commissioners had, while sitting as a board of revision, was either to compel the local assessors to value properly, or to themselves consider complaints against the assessment of particular properties; instead of which they appointed other persons to make proper valuations, and intended to consider the report made by them, when assessing the properties of plaintiffs and the other tax-payers of the county; and that the whole of this proceeding was "unconstitutional, irregular, illegal and void," and hence any action founded upon it should be enjoined.

Since the question thus raised is a public one, of great future importance, alike to the various counties and the taxpayers therein, we shall proceed to decide it, although it might be considered moot, so far as the present case is concerned, in that the county commissioners, obeying the express requirements of the statutes, have since done everything which the bill seeks to compel: Brown v.

Leib, 267 Pa. 24; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498.

We are clear the commissioners, sitting as a board of revision, had a right to pursue the course they did. By section 13 of the Act of July 27, 1842, P. L. 441, 446, it is provided: "That the board of revision in each county shall, on receiving the returns of assessors, proceed to examine and inquire whether the same have been made in conformity with the laws of this Commonwealth, and whether all property to be valued for taxation, for state and county purposes, has been valued at a sum or price not less than the same would bring after full public notice, at a public sale, supposing each separate lot or piece or tract of land, with the improvements, or the personal property of each individual, company or corporation only were to be sold. They shall receive and consider the written communication of any taxable inhabitant of the county, relative to any property which such taxable inhabitant shall believe to have been reduced too low, and on the day appointed for determining whether any property has been reduced too low......
they shall proceed to raise the price or valuation of any [such] property,......and may adjourn from day to day until the whole of such valuation shall have been revised, raised, and equalized."

It will be noticed that while the statute directs the commissioners to "receive and consider the written communication of any taxable inhabitant," it does not indicate any method by which the necessary information is to be obtained to enable them to properly consider such complaints, or to "revise, raise and equalize" the assessments as to those or any other properties, although required to do this as to all the properties in the county, and are not required, by any statute, to have personal knowledge on the subject. It necessarily follows that they are vested with a reasonable discretion, in adopting such necessary and appropriate methods as will enable them to perform the duty imposed upon them, being re-

sponsible, of course, for any abuse of the power. It is clear, therefore, that it cannot be said, as a matter of law, and appellants do not aver it as a fact, that the employment of those who know what the properties would bring separately "after full public notice, at a public sale," is not a reasonable method of obtaining the necessary information.

It must be presumed,—omnia præsumuntur rite esse acta,—and this bill avers nothing to the contrary, that defendants selected only disinterested and fit persons, to aid them in reaching a proper valuation of the various properties, as to some of which expert knowledge was required, notably in valuing the underlying coal, which could only be done after it was known what was the quality, depth, continuity of seams, and facility for marketing it; facts which could be properly considered only by those fully acquainted with the subject, who had made, inter alia, a close study of mining operations, if there were any, and of bore-hole records, if there were not. So, also, it must be presumed, in accordance with the same maxim, that the commissioners, in valuing the properties, would consider the evidence produced by appellants and any other interested party, as well as the information obtained from the valuers, and would do their whole duty to the best of their ability.

It follows that an allegation of mistake in increasing the valuations, could not take the place of an averment (and here there is none) that defendants were corruptly proceeding in assessing and valuing complainants' properties. The only motive averred in the bill, for pursuing the course complained of, is that it was done for the purpose of "obviating the said irregularities" of the local assessors. This is not an objectionable reason; and even if it be true that the report of the valuers was accepted in its entirety, this furnishes no reason for defeating or delaying the assessment, since by accepting the report the commissioners necessarily adopted the valuation as their own (Jermyn v. City of Scranton, 186 Pa. 595,

601), and became personally responsible for all the results flowing from so doing.

The fact that the changes in the assessments were wholesale in their character, is also of no moment (Rees v. City of Erie, 243 Pa. 189); indeed, the revision, raising and equalizing required to be made might well compel this, and the averments regarding the intentionally low valuations fixed by the assessors, show that all had to be raised, unless the commissioners were also to violate their duty. It follows, since the bill does not aver the absence of power, or a disregard of the Constitution or laws in the assessment, that equity is without jurisdiction: Banger's App., 109 Pa. 79; Pittsburgh, etc., Railway Co., v. Township of Stowe, 252 Pa. 149, 155.

The complaint that the tax rate previously fixed, when applied to the valuations reached in the manner above stated, would increase the amount to be realized beyond that authorized by section 2 of the Act of May 24, 1878, P. L. 133, and hence, as alleged, the valuations are illegal, must also fail; if for no other reason, then because the time for determining whether the fact was so, had not arrived when the bill was filed. The assessment was not then completed, and it must be presumed, since there is no averment to the contrary, that if, subsequently, it appeared too great a revenue was provided for, either that the county commissioners would reduce the rate, or would make a proper application to the court under the provisions of the statute.

If we were to heed the contentions that equity has jurisdiction, because otherwise there would be a multiplicity of appeals from the action of the commissioners, or because the difficulty and cost of proving the necessary facts in each of the numerous appeals, we would practically decide that the jurisdiction would exist in all cases, where, as here, the assessors violated their duty and the board obeyed the statute and properly raised the assessments; and probably also after every triennial assessment which increased the valuations. We have

neither power nor inclination to thus extend the jurisdiction of equity in this class of cases. When, as here, there is a duty to assess, and the means employed by defendants are legal, the only remedy open to one who alleges his property has been valued too high, is to follow the statutory method by appealing from the assessment. Any other conclusion might clog, if it did not stop, the wheels of government. Moreover, since the court may, under proper circumstances, consolidate the appeals, the trials need not be too numerous, and the difficulty and cost would be little, if any, greater at law than in equity.

If the local assessors, or any of them, are intentionally disobeying the law, in not making the assessments at the actual value of the properties, they can be and probably should be indicted under section 3 of the Act of May 15, 1841, P. L. 393; but this wrongdoing on their part furnishes no reason for preventing the commissioners from obeying the statute, even though, as averred in the bill, "it has for many years been the custom of assessors, in the County of Schuylkill, to value real estate for assessment and taxation with little or no regard to the said requirements of the law." Such a custom, if it exists, is illegal; and its long continuance would be no defense to an action to compel the assessors to perform their duty, or to an indictment for failing so to do.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellants.