## Hammermill Paper Company *v.* Erie, Appellant.

Argued September 29, 1952. Before STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused December 5, 1952.

*Gerald J. Weber,* City Solicitor, with him *Maurice J. Coughlin,* Assistant City Solicitor, for appellant.

*Mortimer E. Graham,* with him *Gifford, Graham, MacDonald & Illig,* for appellee.

OPINION BY MR. JUSTICE BELL, November 18, 1952:

There are three major questions involved in this appeal: (1) Did the City Assessor in fact make an assessment; (2) Was the assessment valid and constitu-

tional; (3) Was the plaintiff upon the facts disclosed by the record entitled to relief.

The Real Estate assessor of the City of Erie, who was duly elected by the City Council, made in 1948 a triennial assessment of each piece or parcel of real estate in the City of Erie, *omitting* therefrom any valuation of industrial machinery. In *United Laundries v. Board of Property Assessment,* 359 Pa. 195, 58 A. 2d 833, this Court decided that industrial machinery and equipment, indispensable for carrying on that particular industrial business, became a fixture and as such a part of the real estate, and hence should be included in the assessment of real property of which it was a part. As a result of that decision, it was apparent that a new assessment should be made.

The City Council of Erie, spurred by an action of mandamus, directed the City Assessor to assess the industrial machinery of all industries in Erie as part of the real estate. Under The Third Class City Law,* the only (relevant) qualification necessary for a tax assessor in third class cities is a residency in the city for the five previous years and ownership of real estate therein having a value of at least $500. The City Council, realizing that the City Assessor had little if any knowledge of the value of industrial machinery, entered into a contract with Cole-Layer-Trumble Co., a firm of out-of-state industrial appraisers to assist the City Assessor in appraising the machinery of certain plants for taxation purposes. From the fact that the City paid the appraisal company $58,000 to appraise the industrial machinery in 109 large industrial plants, it is apparent that such an appraisal required considerable knowledge and experience and a specialized ability

---

* Act of June 23, 1931, P. L. 932, 53 PS 12198-101 et seq., §2506(a).

in that particular field. This contract also provided, inter alia, that the City Assessor should retain and perform his duties as Assessor.

The City Assessor aided by the appraisal of Cole-Layer-Trumble Co., made *an interim assessment in 1950* under the authority of The Third Class City Law which in §2506(a) gives an assessor in interim years the power to correct any errors of law, fact or judgment which may have been made in making the triennial assessment. The interim assessments were affirmed by the Board of Revision of Taxes. From the Order of the court below striking off this interim assessment and reinstating the triennial assessment of 1948, the City of Erie took this appeal.

The record in this case is both confused and confusing but we believe the following constitutes an accurate summary of the facts. Assessments of real estate, including land and improvements but not industrial machinery, made in *1948,* for the triennial period (1949, 1950, 1951) were based upon *1933* actual market values. What the Assessor should have done was to ascertain and fix the market value of each property as of 1950 and not as of 1933; and then if he so desired, reduce that value in every instance by a certain fixed uniform percentage or ratio. This reduction of the market value of each property by a certain and uniform percentage is a method often employed, although a strict compliance with the Statute would be to assess the property at its then existing actual market value, after which the proper authorities could, if they so desired, reduce the tax rate.

In making the interim assessment of those properties which consisted of land and an industrial plant with industrial machinery (therein), taxable under the assembled industrial plant doctrine, the Assessor adopted, *so far as large industrial plants* were con-

cerned, the appraisals of industrial machinery made by (Cole-Layer-Trumble Co.) the appraisal company, believing as he had a right to do, that the appraisals by these disinterested specialists were fair, just and uniform. The City Assessor had visited appellee's plant on several occasions and had consulted with Cole-Layer-Trumble Co.'s appraisers frequently during their appraisal of appellee's property, but had little if any personal knowledge of the value of industrial machinery or of the method or system used by the appraisal company to arrive at its final valuation. The appraisal company used replacement cost of machinery less depreciation to determine the actual or market value of the machinery in 1950. In this case, since the 1933 values were used for land, it would seem appropriate to use 1933 value for industrial machinery. However, (almost all of) the industrial machinery of this appellee, and of most plants in Erie, was admittedly not in existence in 1933; consequently the appraisal company selected 1941 which was generally considered a normal year. The Assessor then adopted as his valuation in each industrial plant the value of the industrial machinery found by the appraisal company which, as we have seen, was the replacement cost of such machinery in *1941,* less depreciation.

The interim assessment of appellee's property in *1950* included $2,516,280.00 for industrial machinery; this amount was added by the Assessor to the *1933* market value of this property (including land and improvements) ; the Assessor then found the *1950* market value of the property *as a whole* to be the sum total of these separate items or appraisals. Appellee, the owner of the property, made no effort to prove the market value of its land or buildings or of its industrial machinery or of its property as a whole as of 1933 or 1941 or 1948 or 1950 or of any time whatsoever, but frankly admitted

that the 1950 market value would be very considerably above the Assessor's interim (1950) valuation or assessment. Appellee merely attempted to prove by cross-examination of the Assessor (a) that he had very little knowledge, if any, of the value of industrial machinery; (b) that he had unqualifiedly rubber-stamped and adopted the valuations of industrial machinery made by the appraisal company with virtually no knowledge of how they were arrived at; and (c) that he had used a different and illegal method or yardstick or formula or standard to determine and fix the value of land, and of machinery in large industrial plants, and of machinery in small industrial plants. From the evidence elicited by a cross-examination of the City Assessor, appellee contended and the Court below found (1) that the City Assessor *never did in fact* make an assessment, and (2) the methods and standards he employed were illegal and non-uniform and (3) the interim assessment of 1950 was illegal and void. Since these contentions and issues are closely related they will be considered together.

The Act of May 25, 1939, §1, as amended,* requires an Assessor to *"make or cause to be made**"* during the year 1945 and every third year thereafter a full, just, equal and impartial assessment of all property . . . . In all cases he shall value or cause to be valued the property at the actual value thereof". The duty of the Assessor is clear. Furthermore, Article IX, §1 of the Constitution of Pennsylvania provides: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority

---

* As amended 1939, May 25, P. L. 225 §1; 1945 April 10, P. L. 167 §1; 1951, Aug. 17, P. L. 1262, §1; 53 P.S. 12198-2504.

** Italics throughout, ours.

levying the taxes, and shall be levied and collected under general laws . . . ." "This means", we said in *Allentown School District Mercantile Tax Case*, 370 Pa. 161, 87 A. 2d 480, "that the classification by the legislative body must be reasonable and the tax must be applied with uniformity upon similar kinds of business or property and with substantial equality of the tax burden to all members of the same class: Commonwealth v. Girard Life Insurance Co., 305 Pa. 558, 158 A. 262; Knisely v. Cotterel, 196 Pa. 614, 46 A. 861; Dufour v. Maize, 358 Pa. 309, 56 A. 2d 675; Commonwealth v. McCarthy, 332 Pa. 465, 3 A. 2d 267; Dole v. Philadelphia, 337 Pa. 375, 11 A. 2d 163." ". . . the valuation should be based as nearly as practicable upon market value . . . . A tax to be uniform must operate alike on the classes of things or property subject to it": *Commonwealth v. Overholt & Co.,* 331 Pa. 182, 189, 191, 200 A. 849. Each property should be assessed at its fair market value; it cannot be assessed at more than its fair market value or higher than the percentage of value uniformly fixed throughout the taxing district, nor can there be an intentional or systematic under-valuation of like or similar properties: *Cumberland Coal Co. v. Board of Revision of Tax Assessments,* 284 U.S. 23, 28.

The parties disagree as to what is meant by a reasonable, practical and just classification, and by equality and uniformity, and who has the burden of proof.

In *John Wanamaker, Philadelphia, Appeal,* 360 Pa. 638, 642, 646, 647, 63 A. 2d 349, it was said: "The burden was upon the [property owner] to show by the weight of the credible evidence that the valuation by the Board of Revision of Taxes was not on a proper legal basis, in that it was excessive, or unjust, inequi-

table or not uniform in comparison with other [similar] real estate in the district. . . . In Lehigh & Wilkes-Barre Coal Co.'s Assessment, 225 Pa. 272, ELKIN, J., stated at page 276:

'The orderly method . . . is to offer in evidence the assessment of record . . ., as approved by the board of revision, . . . This makes out a prima facie case showing the validity of the assessment. The complaining real estate owner then has the laboring oar to show by the weight of the evidence that he has been aggrieved by the valuation so fixed . . . .'

". . . It was urged that the assessment was improperly made . . . . He [the Assessor] does not testify as an expert and it is sufficient if he bases his valuation upon his experience and opinion as to the fair market value of a property. See Metropolitan Edison Co.'s Appeal, 307 Pa. 401. . . .

"In discussing the development of the assessment of taxes on real estate and its interpretation by our courts in Pennsylvania, COULTER, J., in Insurance Co. v. Yard, 17 Pa. 331 (1851), on pages 337 and 338, said:

'Our primary officers, such as assessors and collectors, come annually from the body of the people. Honesty and fair intentions towards their fellow citizens are deemed sufficient to compensate for the want of technical [knowledge or skill]. If they do what is substantially just, and what will enable the citizen to guard against oppression in the mode pointed out in the law, and what will enable him by appeal to the proper tribunal to guard against inequality between himself and those in like circumstances—all is performed which is just and necessary to give him the full benefit of the laws.'

"In Pittsburgh Terminal Coal Company Appeals, 83 Pa. Superior Ct. 535, Judge GAWTHROP said at pages

537 and 538: 'When an appeal is taken from the decision of the board of revision . . . to the court of common pleas, *the question* before the latter tribunal *is not whether the value placed upon certain constituent elements* properly entering into the value of the subject of taxation *is just and equitable, but whether the assessment of the subject as a whole is just and equitable.'* See also Susquehanna Collieries Company's Appeal, 335 Pa. 337; Metropolitan Edison Co.'s Appeal, 307 Pa. 401, 404."

In *Susquehanna Collieries Co.'s Appeal,* 335 Pa. 337, 6 A. 2d 831, where contiguous tracts of land which were previously separately assessed were consolidated for assessment purposes, since they were all used by the company in the conduct of a single mining operation, this Court in sustaining the assessment said: "In arriving at the total valuation of such land it is proper for the assessor to show the value of different items of the property where they require the application of different standards of value. Cowanshannock Coal & Coke Co.'s Tax Assessment, 283 Pa. 122, 124; Glen Alden Coal Company's Case, 321 Pa. 333, 335; Lehigh Navigation Coal Company's Appeal, 327 Pa. 327, 332, 336. This method enables the taxpayer to determine more readily the correctness of the total valuation. It was said in Pittsburgh Terminal Coal Co. Appeals, 83 Pa. Superior Ct. 535, at 537: 'There may be an enumeration of the constituent parts of a single subject of taxation and a value placed on each. That is a common method of assessment and violates no right of the taxpayer. It has some advantages in that it gives the taxable notice of how his assessment was made up. The integrity of the assessment is not affected by the enumeration of the elements entering into the aggregate of the valuation and the placing of a separate value on each.' "

The duties of a Tax Assessor are quasi judicial and in making the assessment he cannot be compelled to surrender his discretionary powers. The practical difficulties confronting the Assessor in this case must be obvious. There is no evidence how many large or small industrial plants are located in Erie, nor the number of homes and other properties which have to be separately valued and assessed; but since the population of Erie is approximately 130,000, the number of properties to be separately assessed must be very large. All the record discloses on this point is that the appraisal company made an appraisal (at a cost of $58,000.00) of the industrial machinery in 109 large industrial plants in Erie. It is well known that in the progressive industrial age in which we live, appraisals are often very difficult, and frequently require a special knowledge of engineering or of machinery or of minerals or of various component parts that go to make up the value of real estate. Anyone who has had any experience in land damage or assessment cases knows that even men who are qualified as experts often differ widely in their appraisals or valuations.

It is evident that considerable knowledge in this specialized field cannot be expected of an assessor whose only required (pertinent) statutory qualification was that he must own real property of the value of at least $500. We agree with the learned trial Judge that it would be impractical and unrealistic to hold that the Legislature intended that all assessment work in a city the size of Erie should be done personally by one Assessor or by one Assessor with two assistants. It seems to us to follow that the Assessor need not have a personal knowledge, desirable as that would be, of every property in the city which is subject to assessment, nor a personal knowledge of the value of every kind of building, and of every component part of every

industrial plant in the City of Erie; and further that the Assessor had both a right and a duty to avail himself of the knowledge, experience and skill of disinterested persons who are experienced or specialists in matters in which he has little if any knowledge, especially in fields where expert knowledge is necessary; and that such officials may adopt as their own the valuation of property made by experts or specialists: *Pardee v. Schuylkill County,* 276 Pa. 246, 120 A. 139; *Jermyn v. City of Scranton,* 186 Pa. 595, 40 A. 972; *Hosack v. Taylor,* 142 Pa. Superior Ct. 83, 15 A. 2d 489.

It is clear that the Assessor had the power and discretion to consider and adopt or to modify or reject the appraisals made by the appraisal company of the industrial machinery in each large industrial plant in Erie. Believing as he did that the appraisals were fair and produced equality, even a rubber-stamp approval and adoption thereof would not be sufficient to nullify the assessments he made.

In *Pardee v. Schuylkill County,* 276 Pa., supra, this Court said (p. 250-251) that the board of revision of taxes under a similar act, "are vested with a reasonable discretion, in adopting such necessary and appropriate methods as will enable them to perform the duty imposed upon them, being responsible, of course, for any abuse of the power . . . . It must be presumed . . . that defendants selected only disinterested and fit persons, to aid them in reaching a proper valuation of the various properties, as to some of which expert knowledge was required, . . . *even if it be true that the report of the valuers was accepted in its entirety, this furnishes no reason for defeating or delaying the assessment,* since by accepting the report the commissioners necessarily adopted the valuation as their own (Jermyn v. City of Scranton, 186 Pa. 595, 601), and

became personally responsible for all the results flowing from so doing."

We therefore hold that under the evidence in this case, the City Assessor *did in fact* make or cause to be made an appraisal of appellee's property, including the industrial machinery which was a part and parcel of the real estate.

Was the Assessor's valuation and assessment valid and constitutional? It has long been recognized that actual or fair market value of property is ofttimes, like taxation, not a matter of exact science or capable of mathematical accuracy; and that because of the nature of the property or of practical conditions and difficulties, perfect uniformity and absolute equality can at times not be attained. Cf. *Allentown School District Mercantile Tax Case*, 370 Pa. 161, 170, 87 A. 2d 480; *Commonwealth v. Overholt and Co.*, 331 Pa. 182, 192, 200 A. 849; *Colgate v. Harvey State Tax Commissioner*, 296 U. S. 404, 422. Were the methods or yardsticks or formulas or standards used by the City Assessor in arriving at his valuation and assessment of appellee's property as a whole—*1933* market value of real estate (including the value of buildings erected thereon) plus the *1941* value (i.e., replacement cost less depreciation) of industrial machinery in large industrial plants—so different and so arbitrary and unjust, or so basically unsound and unjust as to evince a lack of validity or uniformity? What the Assessor did was certainly a very unfortunate and roundabout method of ascertaining and determining the 1950 actual market value of each piece of real estate with equality and uniformity for all. But from a practical point of view, it was the *equivalent* of finding and fixing the *1950 market value* of each parcel of land, and of each piece of industrial-plant-real estate, and then in each case reducing such value by a fixed and uniform per-

centage.*  A difference in the methods or yardsticks or formulas used in ascertaining and determining actual or market value does not prove lack of uniformity if there is a reasonable, practical and just basis for the application of different methods or formulas.  Cf. *Nashville Chattanooga & St. Louis Ry. v. Browning,* 310 U.S. 362; *North Side Laundry Company v. Board of Assessment, Appeals and Review,* 168 Pa. Superior Ct. 495, 79 A. 2d 215.  In the latter case the valuation and assessment of a property on a front foot basis, and of a neighboring property on a square foot basis was sustained because each property could have been put to a different use, thus presenting a reasonable and practical basis for differentiating them and for giving a different actual market value to each property.

In *Nashville, Chattanooga & St. Louis Ry. v. Browning,* 310 U.S., supra, the Court said (page 368) : "That the states may classify property for taxation; may set up different modes of assessment, valuation and collection; may tax some kinds of property at higher rates than others; and in making all these differentiations may treat railroads and other utilities with that separateness which their distinctive characteristics and functions in society make appropriate—these are

---

* With regard to small industrial plants which contained some industrial machinery and which had not been appraised by the appraisal company, the City Assessor, it seems fair to say, made the best assessment he could, even though the lower Court found that "in making these assessments the City Assessor did not use a fixed or intelligible standard of value for appraisals but at times a guess as to what the appraisal company would have established in 1941 reproduction costs, at other times a mere matter of whim or an attempt to effect equalization of assessment between real properties." Whatever its effect on other taxpayers, this does not establish, so far as this taxpayer is concerned, a lack of uniformity. Cf. *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 87 A. 2d 480.

among the commonplaces of taxation and of constitutional law. Kentucky Railroad Tax Cases, 115 U.S. 321; Pacific Express Co. v. Seibert, 142 U.S. 339; Florida Central & P. R. Co. v. Reynolds, 183 U.S. 471; Southern Ry. Co. v. Watts, 260 U.S. 519; Atlantic Coast Line v. Daughton, 262 U.S. 413; Rapid Transit Corp. v. New York, 303 U.S. 573."

One other point is of such importance as to deserve discussion. The city contends that since the assessment of appellee's property is admittedly less than the market value thereof, there cannot be a lack or violation of uniformity, and the taxpayer (appellee) has no standing to complain since he has not been injured. This contention is without merit. Exactly the same contention was made and rejected in *Cumberland Coal Co. v. Board of Revision of Tax Assessments in Greene County*, 284 U.S. 23. In that case the Assessor assessed all virgin coal (as distinguished from "active" coal) throughout the township at the same figure, viz., $260. an acre, notwithstanding the fact that there was a great difference in actual value according to the location of the virgin coal. The Assessor then fixed 50 per cent. of market value as the assessed value. The township contended that such assessments were valid and " 'the courts may not alter individual assessments, provided they do not fix the value at a figure in each instance greater than the fair market value of each owner's property, or, as in the cases before us, higher than the percentage of value, here fifty per cent. uniformly fixed throughout the county, . . . appellant's not having shown that their assessments as made are in excess of fifty per cent. of the fair market values of their property, have no standing to complain.' " Mr. Justice HUGHES, in rejecting this contention, said; (p. 28-29) : "We are unable to agree with this view. It is established that the intentional, systematic under-

valuation by state officials of taxable property *of the same class* belonging to other owners contravenes the constitutional right of one taxed upon the full value of his property. Sunday Lake Iron Co. v. Wakefield, supra; Sioux City Bridge Co. v. Dakota County, supra; Raymond v. Chicago Union Traction Co., supra; Chicago Great Western Ry. Co. v. Kendall, supra. In Sioux City Bridge Co. v. Dakota County, supra (at p. 446), this Court, referring to the dilemma presented by a case where one or a few of a class of taxpayers are assessed at one hundred per cent. of the value of their property pursuant to statutory requirement and the rest of the class are intentionally assessed at a lower percentage, stated the rule to be as follows: 'This Court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, *and the uniformity and equality required by law, the latter requirement is to be preferred* as the just and ultimate purpose of the law.' "

While the methods, yardsticks and formulas employed by the Assessor to determine the actual market value of each large industrial property in 1950, namely *1933* market value for land and buildings plus *1941* replacement depreciated cost for industrial machinery, were certainly far from the wisest or best, nevertheless since the property owner failed to prove that the assessment exceeded the 1950 market value of its property, or that the Assessor's yardsticks and formulas and classifications were arbitrary and unjust to him, or that they did not operate equally and uniformly on all similar properties of the same class, we cannot say

that Article IX, §1 of the Constitution of Pennsylvania was violated.

There is no merit in appellee's contention that the principle set forth in *Hillsborough v. Cromwell,* 326 U.S. 620; *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441; *Iowa-DesMoines National Bank v. Bennett,* 284 U.S. 239; *Cumberland Coal Co. v. Board of Revision of Tax Assessments,* 284 U.S. 23, has been violated. Considering the nature and kind of property involved as well as the practical conditions and difficulties, there has been, in our judgment, no unreasonable classifications, no unjust discrimination, or any intentional or systematic undervaluation of like or similar properties of the same class, or any intentional violation of the essential principle of practical uniformity; hence there was no violation of the 14th Amendment of the Constitution of the United States.

As a result of the confused state of the record, and the failure of the property owner to prove the market value of its property or of any of the component parts thereof, as well as the obvious difficulty which the Assessor had to justify his interim assessment of 1950, the Court below was in a dilemma. It recognized that it did not have sufficient evidence to enable it to fix a just and equitable evaluation of appellee's property, having at the same time due regard to the valuation and assessment made of other properties of the same class. Cf. *Metropolitan Edison Co.'s Appeal,* 307 Pa. supra; Third Class City Law, supra, §2521 as amended. Seeking an equitable solution, it struck off the interim assessment of 1950 and reinstated the 1948 triennial assessment which all parties agree was not made in accordance with the law.

While recognizing the practical difficulties confronting the Court below, we are impelled, for reasons hereinabove expressed, to reverse the Order of the

court below and to reinstate the *interim assessment* made in 1950 by the City Assessor. Because it is doubtful from the record whether duplications or (relatively) minor mistakes were made in connection with the assessment of this appellee's property, the case is remanded to the court below for any further proceedings that it may deem meet, not inconsistent with this opinion.

Order reversed; each party to bear its own costs.