520 A.2d 537

Maryleona Clapsaddle, Appellant *v.* Bethel Park School District, Appellee.

Bethel Park School District, Appellant *v.* Maryleona Clapsaddle, Appellee.

Argued October 7, 1986, before Judges MACPHAIL, COLINS and PALLADINO, sitting as a panel of three.

*Lloyd H. Fuge,* for appellant/appellee, Maryleona Clapsaddle.

*Mark R. Hornak,* with him, *A. Bruce Bowden, Buchanan-Ingersoll Professional Corporation,* for appellee/appellant, Bethel Park School District.

OPINION BY JUDGE MACPHAIL, January 28, 1987:

Maryleona Clapsaddle (Appellant) appeals from a decision of the Court of Common Pleas of Allegheny County which denied her appeal from an adjudication of the Board of School Directors (Board) of the Bethel Park School District (District) and remanded the case to the Board.

Appellant asserts that she was improperly suspended from her position as a professional employee for the 1981-82 school year.[1] Appellant concedes that the District was entitled to suspend a number of teachers due to declining enrollment pursuant to Sections 1124 and 1125.1 of the Public School Code of 1949 (Code),[2] 24

---

[1] Appellant originally was also disputing her suspension for both the 1982-83 and 1983-84 school year, but has since conceded that those suspensions were proper.

[2] Act of March 10, 1949, P.L. 30, *as amended.*

P.S. §§11-1124 and 11-1125.1. She contends, however, that *she* should not have been suspended because the District, which was required by Section 1125.1 to suspend teachers in inverse order of seniority, considered an incorrect date in determining her seniority rights.

Appellant was initially elected by the Board as a temporary professional employee on July 25, 1955. On July 11, 1958, she was certified as a permanent professional employee. Appellant resigned from this position on April 30, 1961. She did serve as a substitute teacher for the school years of 1963-64, 1964-65, 1965-66 and 1966-67.

In 1975, Appellant returned to teaching on a substitute basis. It is her appointment by the Board on December 16, 1975 which is at the center of the controversy. Appellant avers that her seniority rights should be computed from that date, while the District avers that her seniority rights should be computed from July 26, 1979, the date upon which she was appointed by the Board as a permanent professional employee. Both the Board in its adjudication and the Common Pleas Court in its opinion concluded that July 26, 1979 was the proper date. We must affirm this conclusion unless we find that the Board's adjudication violates the constitutional rights of the Appellant, that it is not in accordance with the law, or that any finding of fact necessary to support the adjudication is not supported by substantial evidence. Section 754 of the Local Agency Law, 2 Pa. C. S. §754.

Section 1125.1(a) of the Code, 24 P.S. 11-1125.1(a), provides that *"[p]rofessional employes* shall be suspended . . . in inverse order of seniority. . . ." (Emphasis added.) Further, the District stipulated at the hearing that its policy is to compute seniority from the date an employee was hired as either a temporary professional

employee or a permanent professional employee.[3] The question becomes, then, when was Appellant hired as a professional employee?

Appellant argues that she was hired as a professional employee on December 16, 1975 because she received a letter from the District with that date upon it which stated in part: "You were unanimously elected as a Temporary Professional Employee by the Bethel Park Board of School Directors at a meeting on December 15, 1975."[4] A review of the minutes from that meeting reveals, however, that Appellant was hired not as a temporary professional employee, but rather as a "permanent substitute."[5]

The minutes of a school board meeting are the best evidence of action taken by the board. *Commonwealth ex rel. v. Sunbury School District,* 335 Pa. 6, 6 A.2d 279 (1939). An appointment by a school board cannot be enlarged, diminished, supplemented or changed by evidence extraneous from the minutes, or by actions or declarations of the officials of the school district. *Pittsburgh School District Appeal,* 356 Pa. 282, 52 A.2d

---

[3] Notes of Testimony from September 29, 1982 (N.T.) at 9-10, Reproduced Record (R.R.) at 46a-47a.

[4] Employee's Exhibit 5, R.R. at 241a.

[5] Employee's Exhibit 16, R.R. at 361a. "Permanent substitute" is not a legal term of art in that it is not found in the Code. Rather, the term "permanent substitute" seems to have been coined by the District to refer to a substitute teacher hired to replace a regular teacher on leave for a predetermined length of time, as opposed to a substitute who is on-call to fill in for regular teachers who are ill. In any event, Appellant's appointment as a "permanent substitute" would seem to fall under the definition of "substitute" found in Section 1101(2) of the Code, 24 P.S. §11-1101(2) in that she was "employed to perform the duties of a regular professional employe during such period of time as the regular professional employe is absent on sabbatical leave." After the regular professional employe returned, Appellant apparently was on-call to fill in for teachers who became ill.

17 (1947). In the instant case, it is irrelevant what the letter to Appellant represented. The minutes clearly show that she was appointed as a permanent substitute, not as a professional employee. The minutes must prevail.

Appellant argues further that even if she was not hired as a professional employee in 1975, her seniority rights should be computed from March of 1979. She bases this assertion on what she perceives to be a breach of the collective bargaining agreement covering her employment. It seems that Appellant alleges that a vacant math position was not properly posted. Further, officials of the District told her that such a vacancy did not exist. Contrary to these statements, a math position was filled in March 1979.

Appellant now claims that she should have been given first consideration for the position. A review of the record reveals that Appellant never took any steps to set the grievance procedure in motion under the collective bargaining agreement. Having failed to do so, Appellant may not now argue that she *should* have been appointed as a professional employee in March of 1979. Collective bargaining agreement violations are to be remedied only through the grievance arbitration process, not a Local Agency hearing and appeal. *See Gough v. Norristown*, 66 Pa. Commonwealth Ct. 401, 444 A.2d 839 (1982).

Appellant attempted to show that she had more seniority than one of the teachers who was retained by presenting a list of "Potential Furloughs" which she said had been posted in the faculty room of the school where she taught. Appellant was never able to testify concerning the origin of the document, however.[6] The document never having been authenticated, its probative

---

[6] N.T. at 80-88, R.R. at 117a-125a.

value was slight. The Board obviously chose to believe that the document was not an official and correct representation of seniority. The evidence certainly supports that conclusion.

It is clear that the Board did not err in concluding that Appellant's seniority right should be computed from July 26, 1979. As such, Appellant's suspension was substantively proper.

Appellant also has raised several procedural issues. The first is that the Board violated Section 2 of the Act of July 19, 1974 (Old Sunshine Act), P.L. 486, *as amended, formerly* 65 P.S. §262, repealed by the Sunshine Act, Act of July 3, 1986 (New Sunshine Act), P.L.       .[7] That Section provided as follows:

> The meetings or hearings of every agency at which formal action is scheduled or taken are public meetings and shall be open to the public at all times. No formal action shall be valid unless such formal action is taken during a public meeting.

"Formal action" was defined in Section 1 of the Old Sunshine Act, *formerly* 65 P.S. §261, as "the taking of any vote on any resolution, rule, order, motion, regulation or ordinance or the setting of any official policy."

In *City of Harrisburg v. Pickles,* 89 Pa. Commonwealth Ct. 155, 492 A.2d 90 (1985), this Court determined that while the Harrisburg City Council was not required to open its deliberations concerning a dismissal of a police officer to the public, it did have to pass the order discharging him at a public meeting. We held that the issuing of such an order was "formal action" for purposes of the Old Sunshine Act.

---

[7] The Old Sunshine Act was still in effect at the time of the proceedings before the Board.

In the instant case, it is necessary for the Board to either approve or disapprove of the personnel action taken by District officials. Its hearings and deliberations were not subject to the Old Sunshine Act, but it was necessary for it to adopt its decision at a public meeting either affirming or denying the personnel action in order to validate such action under Section 2 of the Old Sunshine Act, *formerly* 65 P.S. §262. As such, the case must be remanded to the Board to vote on the adjudication at an open meeting in conformance with the New Sunshine Act.[8]

We agree with the assertions of the District that in order to vote on the adjudication it is not necessary to hold new hearings, even though there have been some changes in the membership of the Board. We hold that the Board may vote on the adjudication after a careful review of the record already made, but we do not preclude the Board from holding a rehearing if in its judgment the provisions of the New Sunshine Act require it to do so.

Appellant also objected to the adjudication on the basis that it had not been passed by a majority of the Board. Of course, we cannot say how may members will vote in favor of the adjudication upon remand, but we will decide the issue of whether a majority or simply a majority of a quorum is necessary to pass the adjudication in order to give the parties guidance upon remand.

Section 508 of the Code, 24 P.S. §5-508 sets forth in detail those actions which require a majority. Suspension is not among them. Appellant attempts to impose such a requirement by noting that Section 508 requires a majority in order to enter into contracts where over one hundred dollars is involved and in order to fix sala-

---

[8] The provisions of the New Sunshine Act will prevail upon remand because it went into effect on January 3, 1987 and because the Board has not yet taken any valid action suspending Appellant.

ries or compensation of teachers. It is clear, however, that a suspension is neither the entering into of a contract nor the fixing of a salary. It is, rather, the temporary or perhaps permanent ending of the employment relationship pursuant to the Code. The Code clearly sets forth procedures for suspension. If a majority of a school board were necessary to suspend, the Code surely would have clearly required it in Section 508.

We conclude that a suspension may be validly instituted by a majority of the quorum number of five. *See DiGiacinto v. City of Allentown,* 486 Pa. 436, 406 A.2d 520 (1979).

Finally, Appellant argues the Board considered improper *ex parte* communications in making its adjudication. The communications consisted of a memo from a Mr. Tosh, one of the District's employees. We note from the record that Appellant was afforded a hearing after the distribution of the memo during which her counsel responded to it. It was decided at the hearing that the memo would not be made part of the record, save for the sections referred to by Appellant's counsel, and that the Board would not consider it in making its adjudication.

We feel that the hearing afforded Appellant was sufficient to safeguard her rights. Further, upon remand the new Board members will never have seen the memo, but will only have the opportunity to review the transcript of the remarks by Appellant's counsel.

We conclude that the Common Pleas Court was correct in holding that the adjudication was substantively proper and in remanding the case to the Board. We must, however, modify the Common Pleas Court's order in two respects. First, the Common Pleas Court ordered that the matter be remanded to the Board "for *adoption* of its written Adjudication . . . at a public meeting." (Emphasis added.) We feel that it is improper

for the judiciary to order the Board to adopt the Adjudication. In order for the remand to be more than a hollow act, the Board must be free to vote at a public meeting as it sees fit. Second, the Common Pleas Court remanded for proceedings consistent with the Old Sunshine Act. Now that the New Sunshine Act is in effect, the proceedings must be in conformance with it.[9]

## ORDER

The order of the Common Pleas Court of Allegheny County denying the appeal of Maryleona Clapsaddle from the adjudication of the Board of School Directors of the Bethel Park School District and remanding the case to the Board of School Directors is affirmed as modified in the foregoing opinion.

---

[9] The District has alleged that Appellant's appeal of her suspension is barred by laches in that she attacked her suspension for the 1981-82 school year in proceedings she instituted after she was suspended for the 1982-83 school year. Our review of the record reveals that Appellant repeatedly requested a hearing during the 1981-82 school year but was denied one after the bargaining agent for her collective bargaining unit reached a compromise which called for the suspended teachers to become part of a substitute pool. On the consent form which she signed to effectuate her transfer to the substitute pool, Appellant made a notation which made it clear that she continued to assert that her suspension had been improper. Employee's Exhibit 17, R.R. at 364a.

Although it has not been raised, there could be an issue as to whether the common pleas court's order we deal with here is a final appealable order or one which is interlocutory. We feel that the order is appealable in that it instructs the Board to perform the ministerial act of adopting its written adjudication suspending Appellant. As such, the order effectively put Appellant out of court. *See Hall v. Lee*, 285 Pa. Superior Ct. 542, 428 A.2d 178 (1981).