535 A.2d 1217

James DOVERSPIKE and Amor D. Bullers, Appellants,

v.

David BLACK, Andrew S. Laska, and Jere Pearson, the Commissioners of Jefferson County et al., Appellees.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1987.

Decided Jan. 7, 1988.

Reargument Granted March 18, 1988.

1

2

Robert M. Hanak, Reynoldsville, John M. Elliott, Stephen C. Braverman, Dusty L. Elias, Pittsburgh, for appellants.

John C. Dennison, Solicitor for Jefferson County, Brookville, S. Paul Mazza, Mazza, Heim & Donovan, State College, Richard B. Wickersham, Harrisburg, for appellees.

Before MacPHAIL and COLINS, JJ., and KALISH, Senior Judge.

MacPHAIL, Judge.

James Doverspike and Amor D. Bullers (Appellants) appeal from an order of the Court of Common Pleas of Jefferson County which sustained the preliminary objections filed by the Commissioners of Jefferson County (Commissioners), David S. Barr, t/d/b/a 21st Century Appraisals, Inc. and Pritchard and Abbott Appraisals, Inc. (jointly, 21st Century) and dismissed Appellants' complaint in equity and mandamus. Appellants sought in their action to challenge the validity of a contract executed by the Commissioners and 21st Century providing for appraisals of active mineral lands located in Jefferson County to be conducted by 21st Century. For the reasons which follow, we affirm the common pleas court's dismissal of Appellants' complaint.

Appellants' complaint, which is comprised of five counts, challenges the subject contract on the following grounds: (1) that the contract was awarded without pursuing public bidding procedures and that the services offered by 21st Century do not constitute professional services which would be exempt from public bidding requirements; (2) that the appraisers employed by 21st Century are not licensed real estate brokers; (3) that if 21st Century is viewed as a delegated or assistant assessor, its compensation has not been properly subjected to approval by the Jefferson County Salary Board; and, (4) that the contract was entered into in violation of the Open Meeting Law.[1] Demurrers were filed and sustained regarding each of the counts contained in the complaint.

1. Act of July 19, 1974, P.L. 486, *as amended*, repealed by Section 17 of the Act of July 3, 1986, P.L. 388. The Open Meeting Law appeared at 65 P.S. §§ 261–269. Its repealing statute, the Sunshine Act, now appears at 65 P.S. §§ 271–286. Since the public meeting at issue in the instant case occurred on October 1, 1985, the provisions of the Open Meeting Law are controlling.

4

Our scope of review from the action of a trial court in sustaining preliminary objections in the nature of a demurrer is limited. Of course, preliminary objections admit as true all well-pleaded facts set forth in the complaint and all inferences fairly deducible therefrom. Where no factual disputes exist, it is appropriate for the trial court to interpret the applicable law and resolve the merits of the claim. *Calandra v. State College Area School District*, 99 Pa. Commonwealth Ct. 223, 512 A.2d 809 (1986). Our review is limited to a determination of whether it appears with certainty that the law will permit no relief given the truth of the facts as pled. *Bryson v. Solomon*, 97 Pa.Commonwealth Ct. 530, 510 A.2d 377 (1986).

We turn first to the issue of whether or not the appraisal contract should have been publicly bid. Section 1802 of The County Code,[2] 16 P.S. § 1802 provides, *inter alia*, as follows:

> (a) All contracts for services and personal property where the amount thereof exceeds the sum of four thousand dollars ($4,000), shall be written and shall, except as otherwise hereinafter specified, be made by advertising for bids.
>
> . . . .
>
> (h) The contracts or purchases made by the commissioners involving an expenditure of over four thousand dollars ($4,000) which shall not require advertising or bidding, as hereinbefore provided, are as follows:
>
> . . . .
>
> (5) Those involving services of members of the medical or legal profession, registered architects, engineers, certified public accountants *or other personal services involving professional expert advice.*

(Emphasis added.) The total two year contract price in the instant case is $130,000 and, thus, exceeds the minimum $4,000 expenditure required to trigger public bidding proce-

2. Act of August 9, 1955, P.L. 323, *as amended.*

dures. Moreover, the Commissioners concede that the contract was not publicly bid.

The narrow issue presented, therefore, is whether the appraisal services offered by 21st Century involve professional expert advice so as to exempt the contract for those services from competitive bidding. Appellants argue that the general reference to "professional expert advice" should be limited to individuals who possess similar qualifications to those professionals specifically listed in Section 1802(h)(5). *See* Section 1903(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(b) (general words construed to take their meanings from and be restricted by preceding particular words). While we agree, in general, with this proposition, we must disagree with Appellants' suggestion that post-baccalaureate studies and state certification or licensure are necessary prerequisites for an individual to render "professional expert advice" under Section 1802(h)(5).

We, of course, recognize the public policy considerations which underlie the general requirement that public contracts be competitively bid, including the prevention of fraud and favoritism and protection of the public fisc. *See American Totalisator Co. v. Seligman,* 34 Pa.Commonwealth Ct. 391, 384 A.2d 242 (1977), *aff'd,* 489 Pa. 568, 414 A.2d 1037 (1980). Statutory requirements for public bidding should be liberally construed to effect these purposes. 1 Pa.C.S. § 1928(c). As a corollary, we believe that exceptions to competitive bidding requirements should be narrowly construed. We must, nevertheless, conclude that Appellants' construction of the statutory exception for "professional expert advice" is too limited in this case.

In the case of *Hammermill Paper Co. v. Erie,* 372 Pa. 85, 92 A.2d 422 (1952), *cert. denied,* 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1367 (1953), our Supreme Court recognized the complexity inherent in rendering certain appraisals and the potential need for local assessors to consult with trained valuation specialists.

It is well known that in the progressive industrial age in which we live, appraisals are often very difficult, and frequently require a special knowledge of engineering or of machinery *or of minerals* or of various component parts that go to make up the value of real estate.

. . . .

[T]he Assessor had both a right and a duty to avail himself of the knowledge, experience and skill of disinterested persons who are experienced or specialists in matters in which he has little if any knowledge, especially in fields where expert knowledge is necessary; and that such officials may adopt as their own the valuation of property made by experts or specialists. . . .

*Id.*, 372 Pa. at 95–96, 92 A.2d at 428 (citations omitted).

In *Pardee v. Schuylkill County*, 276 Pa. 246, 120 A. 139 (1923), the Supreme Court similarly recognized the expertise required in appraising mineral lands. Moreover, Pennsylvania has recently begun to require certification of tax assessors, including mass appraisal company employees. Such assessors are required to undergo a course of study covering "the appraisal assessing profession" and successfully complete a comprehensive examination. *See* Sections 5 and 6 of the Assessors Certification Act, Act of December 17, 1986, P.L. 1675, 72 P.S. §§ 5010.5 and 5010.6. We think that the Legislature's reference to "the appraisal assessing *profession*" evidences its recognition of the expertise required of tax assessors in general. In the context of the case at bar, we conclude that the appraisal of mineral lands indeed involves expert professional advice which may be exempted from general public bidding requirements pursuant to Section 1802(h)(5) of The County Code.

Appellants next contend that, even if competitive bidding is not required, the appraisers employed by 21st Century must be licensed real estate brokers in order to legally perform the necessary valuations. In support of this argument, Appellants cite Section 201 of the Real

Estate Licensing and Registration Act (RELRA),[3] 63 P.S. § 455.201, which defines the term "broker" as:

Any person who, for another and for a fee, commission or other valuable consideration:

(1) negotiates with or aids any person in locating or obtaining for purchase, lease or acquisition of interest in any real estate;

(2) negotiates the listing, sale, purchase, exchange, lease, time share and similarly designated interests, financing or option for any real estate;

(3) manages or *appraises any real estate;*

(4) represents himself as a real estate consultant, counsellor, house finder;

(5) undertakes to promote the sale, exchange, purchase or rental of real estate: Provided, however, That this provision shall not include any person whose main business is that of advertising, promotion or public relations; or

(6) attempts to perform any of the above acts.

(Emphasis added.) Appellants aver in their complaint that the appraisers employed by 21st Century to perform mineral land valuations are not licensed real estate brokers and that they, therefore, are not qualified to perform appraisals for the Commissioners. The Commissioners and 21st Century contend, however, that RELRA does not apply to appraisal services for tax purposes. We agree.

In the case of *Kalins v. State Real Estate Commission,* 92 Pa.Commonwealth Ct. 569, 577, 500 A.2d 200, 203 (1985), this Court observed that a principal purpose of RELRA "is to protect buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse by persons engaged in the business." A review of RELRA as a whole reveals its emphasis on the commercial transactions aspect of real estate dealings. For instance, one of the qualifications for a broker's license is that the applicant "shall have been engaged as a *licensed real estate salesperson* for at least three years or possess educational or

**3.** Act of February 19, 1980, P.L. 15, *as amended.*

experience qualifications which the commission deems to be the equivalent thereof." Section 511(4) of RELRA, 63 P.S. § 455.511(4) (emphasis added). A "salesperson" is defined in Section 201 of RELRA as:

> Any person employed by a licensed real estate broker to list for sale, sell or offer for sale, to buy or offer to buy or to negotiate the purchase or sale or exchange of real estate or to negotiate a loan on real estate or to lease or rent or offer to lease, rent or place for rent any real estate or collect or offer or attempt to collect rent for the use of real estate for or in behalf of such real estate broker.

Again, the scope of RELRA as evidenced by its language is directed primarily, if not exclusively, at the commercial activities surrounding real estate transactions. We believe that the performance of appraisals under RELRA should be viewed in that context. Thus, it is clear that appraisals performed in conjunction with commercial real estate transactions must be performed by a licensed real estate broker. We conclude, however, that appraisal services for tax assessment purposes do not come within the scope of RELRA and that such appraisals need not be accomplished by licensed real estate brokers.

We find further support for our holding in the terms of the recently enacted Assessors Certification Act (Act), 72 P.S. §§ 5010.1–5010.10, which applies to persons who appraise real property for ad valorem taxation purposes. Under that Act, which became effective on March 17, 1987, persons employed by reevaluation companies, or mass appraisal companies, must meet certain minimum qualifications including instruction regarding "the appraisal assessing profession." Section 5 of the Act, 72 P.S. § 5010.5. The qualifications do *not* specifically include licensure as a real estate broker, although Section 6 of the Act, 72 P.S. § 5010.6, does provide that its terms should not be viewed as relieving an individual from any existing obligation to be licensed as a real estate broker under RELRA. By failing to include licensure as a real estate broker as a definite prerequisite to certification as an assessor, we believe the

Legislature has expressed its intent that tax assessors need not necessarily also be real estate brokers.

■ Appellants next argue that the Commissioners may not contract for the performance of tax assessments by independent contractors and that if the appraisers employed by 21st Century are regarded as assistant assessors then they must be subjected to salary board approval. Our review of The Fourth to Eighth Class County Law,[4] 72 P.S. §§ 5453.101–5453.706, reveals no bar to the Commissioners' power to contract for valuation services. *See Detterline v. Rubino*, 48 Pa.D. & C.2d 725 (1969). Again, the expertise required in the area of appraising mineral lands will often not be possessed by local assessors. We believe the Commissioners may, in the exercise of their sound discretion, resolve to seek the assistance of professional appraisers in such instances. With regard to the need for salary board approval, we need only note that 21st Century has not been hired as a County employee and, accordingly, no need for salary board approval of the compensation to be paid to 21st Century exists.

The final issue which we must address is whether the subject contract was executed in violation of the Open Meeting Law, *formerly* 65 P.S. §§ 261–269. Appellants contend that, although the contract was voted on at a public meeting held on October 1, 1985, the fact that the contract is dated September 1, 1985, indicates that the contract was in fact entered into in a closed-door session.

■ Section 2 of the Open Meeting Law, *formerly* 65 P.S. § 262, provides as follows:

The meetings or hearings of every agency at which formal action is scheduled or taken are public meetings and shall be open to the public at all times. No formal action shall be valid unless such formal action is taken during a public meeting.

The term "formal action" is defined as *"the taking of any vote on any resolution,* rule, order, motion, regulation or ordinance or the setting of any official policy." Section 1 of

4. Act of May 21, 1943, P.L. 571, *as amended.*

the Open Meeting Law, *formerly* 65 P.S. § 261 (emphasis added). Appellants aver in their complaint that the following resolution was passed by the Commissioners at a public meeting on October 1, 1985:

Motion by Mr. Black, second by Mr. Laska to sign a Tax Assessment Service Agreement between the Jefferson County Commissioners and 21st Century Appraisals/Prichard & Abbott, R.D. 1, Port Matilda, PA. Mr. Caldwell voted yes, Mr. Black voted yes and Mr. Laska voted yes.

We conclude that this public vote was sufficient to validate the execution of the contract and to satisfy the requirements of the Open Meeting Law regarding formal action. *See Clapsaddle v. Bethel Park School District*, 103 Pa. Commonwealth Ct. 367, 520 A.2d 537 (1987).

For the reasons set forth in the foregoing opinion, the order of the common pleas court will be affirmed.

## ORDER

The order of the Court of Common Pleas of Jefferson County in the above-captioned matter is hereby affirmed.

COLINS, Judge, dissenting.

I dissent. I agree with appellants' contention that the general reference to "professional expert advice" should be strictly limited to individuals who possess similar qualifications to those professionals specifically listed in Section 1802(h)(5).

There is no professional licensing nor educational program specifically for appraisers within the Commonwealth of Pennsylvania. It could well be possible that this entity was formed specifically to obtain a lucrative contract offered by the County Commissioners without going through a competitive bidding process. Therefore, the matter should be allowed to proceed beyond the pleadings so that a proper record may be developed.

I believe that The County Code must be strictly interpreted when considering forays into the public treasury which

are claimed to be exempt from the competitive bidding process.