City of Harrisburg, Appellant *v*. Richard Pickles, Appellee.

156

Argued January 28, 1985, before Judges ROGERS, MACPHAIL and DOYLE, sitting as a panel of three.

*Judith Brown Schimmel,* with her, *Nathan H. Waters, Jr.,* for appellant.

*P. Richard Wagner,* for appellee.

OPINION BY JUDGE DOYLE, May 7, 1985:

This is an appeal by the City of Harrisburg (City) from a decision and order of the Court of Common Pleas of Dauphin County which reversed a decision of the Harrisburg City Council (Council) dismissing police officer Richard L. Pickles (Officer Pickles) from his position with the Bureau of Police of the City of Harrisburg, effective June 24, 1983.

The following factual scenario was uncontradicted in the record. At approximately 1:45 a.m. on December 4, 1982 Officer John T. Spicer of the Harrisburg City Police observed an automobile which had been reported as stolen. The automobile, which was stopped at a traffic light, had no headlights on. Officer Spicer, who was in uniform and driving a marked patrol car, followed the automobile to Williams Street in Harrisburg, at which point he activated his emergency lights, exited his patrol car, and approached the operator's side of the suspect vehicle. As Officer Spicer approached, the operator of the suspect vehicle observed him and drove away. Officer Spicer followed in his vehicle; again the suspect car stopped and when Officer Spicer approached the operator he again sped away in his vehicle. Officer Spicer continued in "hot pursuit" as the cars barreled through controlled intersections at speeds of up to eighty miles an hour. The suspect vehicle, still with its lights out, turned into a one way street (Seneca Street) and forced another vehicle out of its lane of travel. During the course of the pursuit Officer Spicer had

radioed that the suspect vehicle was one reported to have been stolen and that it had sped away after being stopped. After the suspect vehicle turned up the one way street, Officer Spicer broke off his direct pursuit and other officers who had heard his radio message, including Officer Pickles and Officer Richard Mowrey, (each of whom was driving an unmarked car) took up the chase. Meanwhile, Officer Darnell Bowman, in a marked patrol car with the bar light flashing, was also closing in. The chase continued (with the suspect vehicle's lights still out) at speeds in excess of eighty miles an hour down Front Street in Harrisburg through two red lights. Finally, at the intersection of Front and State Streets, the suspect vehicle came to a stop with Officer Mowrey's vehicle cutting it off in the front and Officer Pickles' car to the rear. Officer Mowrey exited his vehicle and ran toward the left front headlight area of the suspect vehicle shouting "City Police, you're under arrest, put your hands up." The suspect ignored the command and attempted to start his vehicle. Officer Mowrey, fearing that he might be run down, moved toward the curb. At that point Officer Mowrey observed Officer Pickles approach the window on the operator's side of the suspect vehicle. The window was open. Officer Pickles shouted twice to the suspect that he was a police officer and ordered the suspect to "get his hands up." The suspect continued attempting to again start the car. Officer Mowrey then observed Officer Pickles reach inside the suspect vehicle with a "batting motion". At that time Officer Mowrey believed that Officer Pickles was attempting to prevent the suspect from again starting the car. Officer Mowrey moved toward the car. He saw Officer Pickles move and arch his back away from the driver, and then saw a gun flash.

Officer Pickles had reached into the car to pull the suspect's hand off of the ignition at which point the suspect reached under the dashboard with both hands and turned toward Officer Pickles with what Officer Pickles believed to be an automatic weapon. Officer Pickles had attempted to block the object but the suspect "kept bringing it up". Officer Pickles yelled to Officer Mowrey that the suspect had a gun. Officer Pickles fired his own weapon striking the suspect, Leon Marks, in the head and killing him.

Moments later Officer Lindsey Deppen arrived at the scene and opened the door of the suspect vehicle. What Officer Pickles had thought to be a weapon was actually an automobile rear view mirror. The mirror was between the victim's legs clutched in both his hands with only the dark side and the handle or grip visible. Officer Deppen was unable to identify the object as a rear view mirror until he examined it from only a few inches away.

Subsequent to this tragic incident, Council, by amended letter dated March 17, 1983, informed Officer Pickles that he was being charged with various infractions as follows:

You are being charged with the following violations of the Disciplinary Code of the Harrisburg Police Bureau . . . :

ARTICLE I—Conduct Unbecoming an Officer

Section 1.12—Repeated violations of departmental rules and regulations or other course of conduct indicating that a member has little or no regard for his/her responsibility as a member of the Bureau of Police.

ARTICLE IV—Neglect of Duty

Section 4.05—Failure to comply with any Police Chief's or Director of Public Safety Or-

ders, Directives, Regulations, etc., or any oral or written orders of superiors.

ARTICLE V—Disobedience of Orders

Section 5.09—Improper use, handling or display of firearms.

A hearing was held after which Council issued an adjudication. Council found that Officer Pickles was guilty of: (a) conduct unbecoming an officer, because, after stopping behind the suspect vehicle he exited his car, "instead of assuming a back-up position of cover or concealment. . . ."; (b) failure to comply with orders, directives, and regulations, (although Council did not specify what orders, directives, and regulations he failed to follow); and (c) improper use, handling or display of firearms. Council, in its determination of this last charge, relied upon Public Safety Directive No. 5 which announces the policy that an officer "exhaust all other reasonable means of apprehension and control before resorting to use of deadly force and further provides "[i]t is also the policy of this Bureau that members will not necessarily or unreasonably endanger themselves in applying these guidelines to actual situations." Additionally, Council considered the directive's establishment of the defense of justification "when necessary to prevent death or serious bodily injury to the officer or another. . . ." Council found, however, that no such justification existed, rejecting Officer Pickles' contention that the suspect had turned toward him with an object in both hands, thus causing Pickles to fire in self-defense. Determining that Officer Pickles was guilty of the charges, Council ordered that his employment with the City be terminated. This order was appealed to the Court of Common Pleas of Dauphin County where, after taking additional evidence, the court reversed Council's decision, on the grounds that

Officer Pickles was denied procedural due process and that there was no substantial evidence to support Council's decision. The instant appeal ensued.

Our scope of review is limited to determining whether the lower court committed an error of law, a constitutional violation or an abuse of discretion. Section 754 of the Local Agency Law, 2 Pa. C. S. §754. The trial court correctly noted that its de novo review, conducted pursuant to Section 4408 of The Third Class City Code,[1] (Code), is a limited one. "[A]lthough the court of common pleas conducts a hearing de novo the court may not substitute its discretion for that of city council if the evidence produced at the hearing in the court below supports the discretion exercised by counsel; . . . the court may not interfere with council's decision unless council has flagrantly abused its discretion or violated the law; . . . unless the evidence be such that if the case were being tried by a jury the court would be required to enter a nonsuit or a judgment n.o.v. the court is required to affirm the findings of city council even though the court as an independent fact-finding body might conclude otherwise." *City of Bethlehem v. Gawlik*, 30 Pa. Commonwealth Ct. 390, 393, 374 A.2d 540, 542 (1977) (citing *Ditko Appeal*, 385 Pa. 435, 123 A.2d 718 (1956)). Succinctly stated, the trial court may not disturb Council's action if that action was based upon substantial evidence. *Kraft v. City of York*, 43 Pa. Commonwealth Ct. 82, 402 A.2d 1089 (1979). Moreover, due respect and weight must be given to the action of the municipal body authorized to act. *Oswald v. City of Allentown*, 36 Pa. Commonwealth Ct. 238, 388 A.2d 1128 (1978). We review the trial court's action in light of these strictures. As the bases for its appeal the City asserts as error (1)

---

[1] Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §39408.

that contrary to the trial court's determination, Officer Pickles was not deprived of procedural due process and (2) that the trial court abused its discretion in determining that there was no substantial evidence to support the charges or the dismissal.

PROCEDURAL ISSUES

I. THE NOTICE

The trial court, in considering the March 17, 1983 letter, referred to above, determined that the notice of charges given to Officer Pickles was insufficient to comport with due process. For guidance in determining what type of notice should be afforded a discharged civil servant, we look to civil service law. In *Wood v. Department of Public Welfare,* 49 Pa. Commonwealth Ct. 383, 411 A.2d 281 (1980) this Court held that a removal notice which gave as the reason for the personnel action "continued unsatisfactory work performance" was insufficient to demonstrate compliance with a State Civil Service Commission regulation requiring an adequate explanation for the removal of a regular status employee. In *Wood,* we recognized that while a "removal notice need not be drafted with the certainty of a bill of indictment," it must "be framed in a manner which enables the employee to discern the nature of the charges and adequately to prepare a defense." *Id.* at 386, 411 A.2d at 283. Although the City is not subject to State Civil Service Commission regulations, it, too, must provide adequate due process notice. The charges in the March 17, 1983 letter apprise Officer Pickles of virtually nothing. The first two charges in particular provide Pickles with no more information than that given to the employee in *Wood.* Certainly a defense could not be adequately prepared based upon such scant information.

This Court looks with particular disfavor upon the response by the City's attorney in his argument before Council to the objection to the inadequate notice; his assertion that "[t]his is the way that we have handled these cases in the past" is not a poor excuse; rather, it is *no excuse at all* for a constitutional infirmity. Furthermore, we agree with the trial court that the fact that Officer Pickles was informed of the charges in connection with proceedings before the Firearms Review Board and the Disciplinary Review Board is irrelevant.[2] As the trial court wrote, "the accused was entitled to know what charges City Council would be weighing, not some prior Board." Of course, had Officer Pickles admitted on the record that he had *actual* notice which was sufficient to enable him to defend himself, this would be a different matter. We, however, can find no such admission, nor has one been pointed out to us. The trial court further noted that the vagueness of the charges created "confusion among the prosecutors as to what the charges were." We thus find that the trial court correctly determined that notice to Officer Pickles was constitutionally infirm.

## II. THE EVIDENTIARY PROBLEMS

The City also argues that the trial court erred in determining that Officer Pickles was not permitted the right to confront and cross-examine his accusers. Succinctly stated, the trial court found that various

---

[2] The City's brief explains that whenever an officer's weapon is discharged, a Firearms Review Board (FRB) must be convened to investigate the incident. The FRB determines whether disciplinary action should be imposed and may direct a supervisor to initiate such an action. If such action is initiated, a Disciplinary Review Board (DRB) is convened. The DRB makes recommendations to the public safety director who ultimately determines whether discipline should be imposed.

reports were submitted to and reviewed by Council, but that these reports either were not subsequently admitted or were improperly admitted into evidence, resulting in great prejudice to Officer Pickles. The reports contained, *inter alia*, conclusions of law on the exact issues being considered by Council. Additionally, the trial court found improper significant portions of the testimony of public safety director Alfred W. Dean, who, although he had no first hand knowledge of the material facts, was permitted to (1) interpret the language of regulations with familiar ordinary meanings, and (2) testify as to his conclusions which were based upon information in reports prepared by others. Mr. Dean had, in addition, after the Disciplinary Review Board substantially exonerated Officer Pickles, written to that Board objecting to its findings and expressing his belief that Officer Pickles had been guilty of misconduct requiring dismissal. This letter, which the trial court determined to be the most argumentative portion of Mr. Dean's testimony, was admitted into evidence before Council. Moreover, the trial court expressed its concern that Council did not have the record of the proceedings transcribed so that Mr. Dean's total testimony (which presumably would have tempered the inflammatory affect of the letter) was not before Council during its decision making process. We quote briefly from Mr. Dean's letter merely to establish its tenor. "It is my considered opinion, that the Disciplinary Review Board, has failed to provide objective, rational judgment, which is consistent with factual evidence, and the rules and regulations of this Police Bureau."

With respect to these evidentiary problems the City asserts that because Officer Pickles' petition for appeal before the trial court did not specifically raise the issue of whether the various reports and the testi-

mony of Mr. Dean constituted inadmissible evidence, this issue was waived. The eleven page petition for appeal does, however, allege that "[t]he evidence at the time of the hearing before City Council was insufficient to support the charges against the Petitioner herein." The trial court thus acted properly in reviewing the record to ascertain whether there was, in fact, substantial evidence to support the charges.

### III. The City Solicitor Issue

The City next asserts that the trial court erred in determining that the employment of the city solicitor (who is also solicitor to the Council) as the prosecutor in this case came perilously close to violating due process. While we share the concern of the trial court that impermissible commingling of functions *could* occur in such a situation, this possible procedural defect was clearly not raised in the petition for appeal before the trial court, nor did the trial judge take de novo testimony on this point. The trial court erred, therefore, in raising this issue *sua sponte* after the hearing was closed. *Somerset Mental Retardation Unit v. Sanders* (No. 2740 C.D. 1983, filed October 24, 1984).

### IV. The Sunshine Law Issue

The trial court next determined that because Council had not voted on Officer Pickles' dismissal in a public meeting after notice, violations of Sections 2 and 5 of the Act of July 19, 1974, P.L. 486, *as amended*, 65 P.S. §262 and §265, had occurred. Section 2 of that act (commonly referred to as the Sunshine Law) provides as follows:

> The meetings or hearings of every agency at which formal action is scheduled or taken are public meetings and shall be open to the public at all times. No formal action shall be valid

unless such formal action is taken during a public meeting.

Definitionally, under Section 1 of the Sunshine Law, an "agency" includes, *inter alia*, "any political subdivision of the Commonwealth" and a "formal action" is the "taking of any vote on any resolution, rule, order, motion, regulation or ordinance or the setting of any official policy." 65 P.S. §261.

The trial court concluded that "[w]hile Council did not have to open its deliberations on the dismissal to the public, it did have to pass the *resolution* discharging the officer from the police force at an open, public meeting." (Emphasis added.) The City argues first that under Section 4408 of the Code, which Section authorizes Council to discharge an employee, a resolution was not necessary and second that the action taken was adjudicatory in character so that the Sunshine Law is inapplicable. Section 4408 of the Code, 53 P.S. §39408, reads in pertinent part, "[o]n hearing before the city council . . . [employees] may be discharged by city council, if found guilty of the charges made against them." While Section 4408 does not specify that dismissal must be by *resolution,* the dismissal did require an *order.* The action taken thus falls within the definition of "formal action" under the Sunshine Law. Moreover, the fact that the action was quasi-judicial does not remove it from the provisions of the Sunshine Law. We addressed this specific issue in *Appeal of Emmanuel Baptist Church,* 26 Pa. Commonwealth Ct. 427, 432-33, 364 A.2d 536, 539-40 (1976), when, after noting the all encompassing effect of the Sunshine Law, we rejected the zoning board's argument for a quasi-judicial exception and wrote:

. Since 1957, Pennsylvania has had an open meeting law which compels organizations

created pursuant to statute and performing essential governmental functions to render their decisions at public meetings. The current Sunshine Law expands upon this law and is in keeping with the trend of legislation throughout most of these United States. Support for such legislation is obviously widely accepted and easily justified. As one commentator has stated:

"The arguments for open meetings rely on the premise that public knowledge of governmental action is essential to the democratic process. Open meeting legislation is helpful to both the citizens and the public officials. As for the public at large, open meeting requirements curtail governmental officials' misbehavior, provide for a more educated public, make for more accurate reporting of governmental activities by the press, and allow decisions which result in the expenditure of public funds to be made openly. Public officials benefit because open meetings provide them with accurate information concerning the issues involved, better enable them to gauge public reaction, and foster public faith in government." Kalil, Florida Sunshine Law, 49 Fla. B.J. 72, 72 (February 1975).

Commentators have not, however, overlooked the need for certain governmental decisions to be made at closed meetings. It is suggested by some commentators that either the legislatures or the courts carve out exceptions to provide for the exclusion of proceedings related to personnel management, labor negotiations, official investigations, and proceedings relating to the acquisition of real property,

among others. Obviously the Pennsylvania Legislature has not overlooked some of these problems. See Section 3 of the Act, 65 P.S. §263. There does not, however, appear to be general encouragement for the legislature or for the courts to exclude the quasi judicial actions of governmental agencies from such coverage. The issue was squarely confronted in Canney v. Board of Public Instruction of Alachua County, 278 So.2d 260 (1973), where the Florida Supreme Court in applying that state's sunshine law concluded that a governmental body when acting in its quasi judicial capacity cannot be excluded from coverage. . . . (Footnotes omitted.)

We find that *Emmanuel Baptist,* which accepted the language of *Canney,* controls in the instant case, and thus reject the City's position that Council was not required to comply with the Sunshine Law.

The City next argues that because the decision here was rendered by an elected body, rather than an appointed one, the Sunshine Law is inapplicable. *Canney* involved elected school board officials and, as just noted, we cited it with approval in *Emmanuel Baptist.* We thus, reject the City's contention. Finally, the City maintains that the Sunshine Law issue was not properly preserved for review before the trial court because it did not appear in the petition for appeal to that court. It is our view, however, that the City waived its objection by permitting the testimony taken by the trial court on this issue to proceed without making a timely objection.

Summarizing the procedural issues in this case, we hold that while the trial court erred in considering the role of the city solicitor, it correctly determined that the notice given to Officer Pickles was

constitutionally inadequate, that the presence of significant amounts of hearsay testimony prejudiced Officer Pickles' rights, and that Council erred in not complying with the Sunshine Law.

## V. THE MERITS

The trial court, after discussing the procedural infirmities, determined that disposing of the matter on substantive grounds, rather than remanding, would serve the interests of justice. We agree and review the lower court's handling of this issue as well, recognizing that what the trial court did was to consider the evidence in light of the dictates in *Gawlik* and accordingly, determine that a judgment n.o.v. would have been merited in a jury case.[3] Our reading of the trial court opinion convinces us that Judge WARREN G. MORGAN's discussion of the substantive issue was both well-reasoned and well-expressed. Hence, we will affirm this issue on the portion of the trial court's opinion entitled, "The Substance."

The trial court, in summary, held that the City had not presented sufficient evidence as a matter of law to carry its burden; that Council capriciously disregarded competent evidence; that Council misunderstood the defense of justification; that Council, itself, was unaware of what charges it was considering; and that necessary expert testimony was lacking.[4] We

---

[3] The trial court stated "[o]ur duty here . . . is to determine whether the findings of City Council are supported by the substantial and credible evidence (our duty under the Third Class City Code to hear the case *de novo* surely cannot mean less) and whether the conclusions deduced therefrom are reasonable and not capricious. All orders and decrees of legal tribunals, including those of administrative bodies, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty. . . ."

[4]    D. & C. 3d    (1984). We do not reproduce the opinion here because of its length (42 pages).

must, however, state that our independent review of those portions of the record cited by the City as contrary evidence, which the trial judge disregarded in making his determination, has revealed that the trial court was entirely correct in holding that no substantial evidence existed to support Council's determination.[5] Two brief examples will suffice. First, this Court could not find a single statement that the object which was clutched in the suspect's hand looked initially like a mirror; we did, however, find one positive statement that the object looked like a gun. Second, Public Safety Directive No. 5, cited by the City, is no evidence of a violation of the code of conduct, but is merely a perfunctory document saying, in essence, that police officers should act reasonably and that if they do so the defense of justification will exist. What "evidence" this is that Officer Pickles' conduct violated applicable standards this Court cannot imagine.

Our examination of the trial court's order indicates that that order did not direct Officer Pickles' reinstatement with back pay less any wages earned and benefits conferred under the Public Laws of Pennsylvania. Hence, while we affirm the order of the trial court, we will remand this case so that the trial judge can enter such an order, including a directive that the City's records be made to reflect that the charges against Officer Pickles were dismissed.

ORDER

Now, May 7, 1985, the order of the Court of Common Pleas of Dauphin County, No. 2616 S 1983, dated

---

[5] The record in this case consists of over 1400 pages of testimony before Council in addition to more than 100 pages of exhibits as well as in excess of 100 pages of de novo testimony taken by the trial court.

May 9, 1984, dismissing the charges against Officer Pickles, is affirmed. This case is remanded and the trial court is directed to enter an order consistent with this opinion. Jurisdiction relinquished.

Judge WILLIAMS, JR., did not participate in the decision in this case.

---

CONCURRING AND DISSENTING OPINION BY JUDGE ROGERS:

I concur with the majority's holding that the City Council's hearings were fatally tainted by the receipt into evidence of unauthenticated written reports and the city safety director's opinion as to the meanings of various police regulations and of the appellee's guilt. I also agree that Council's formal action was not taken at an open meeting as required by law. I do not agree that there is insufficient competent evidence in the record to support the City Council's action of dismissing the appellee. I would reverse the court's order, vacate Council's action and remand for a proper hearing of the charges.

Judge WILLIAMS, JR., did not participate in the decision in this case.