**Rita BORNSTEIN, Appellant**

v.

**CITY OF CONNELLSVILLE.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2011.

Decided Feb. 2, 2012.

Benjamin Franklin Goodwin, Uniontown, for appellant.

Suzanne B. Merrick, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, Judge,[1] and BROBSON, Judge and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Rita Bornstein (Bornstein) appeals from an order of the Court of Common Pleas of Fayette County (trial court), dated January 19, 2011. The trial court affirmed the decision of the Connellsville City Council (City Council), terminating Bornstein from her position as Health Officer of the City of Connellsville (City). For the reasons that follow, we reverse and remand.

Bornstein was employed as the City's Health Officer for most of the time period between 1994 and 2008. As of 2008, Bornstein also served as Health Officer for the Borough of · South Connellsville (South Connellsville), the Borough of Dunbar

---

1. This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

(Dunbar), and the City of Monongahela (Monongahela).[2]

In her capacity as the City's Health Officer, Bornstein reported to David McIntire (McIntire), the City's Director of Public Safety and Health.[3] On September 25, 2006, McIntire issued Bornstein a written warning, informing Bornstein that an unidentified resident of the Connellsville area had made allegations that she was working for other municipalities during her normal City working hours. (R.R. at 216a.) McIntire advised Bornstein that she was to conduct only City-related business between 9:00 a.m. and 5:00 p.m., Monday through Friday. McIntire further advised Bornstein that she was not to use the City's "telephones, computers, copy machine, fax machine, etc." for business not related to the City. (*Id.*) Finally, McIntire advised Bornstein that she could face dismissal if she continued to perform work for other municipalities using City time and resources.

Thereafter, the State Ethics Commission conducted an investigation of Bornstein on allegations that she had performed duties for South Connellsville and Dunbar during the same hours that she was being paid by the City, and that she had performed said duties using the City's office, equipment, materials, and supplies.[4] Bornstein was also accused of failing to file required statements of financial interests. On February 15, 2008, Bornstein entered into a consent agreement and a stipulation of findings with the State Ethics Commis-

sion's Investigative Division, in which Bornstein stipulated to the above accusations. (*Id.* at 265a–92a.) The consent agreement provided, however:

> 5. The Investigative Division will recommend that the State Ethics Commission take no further action in this matter; and make no specific recommendations to any law enforcement or other authority to take action in this matter. Such, however, does not prohibit the Commission from ... cooperating with any other authority who may so choose to review this matter further.
>
> 6. Bornstein's acceptance and execution of this Consent Agreement is solely for the purpose of resolving the matter currently pending before the Pennsylvania State Ethics Commission and is in no way related to any other proceedings or matters that may be currently ongoing or which may be initiated in the future. Bornstein, by accepting and executing this Consent Agreement, does not admit the legal conclusions herein, but she accepts the legal consequences set forth in this Consent Agreement.

(*Id.* at 266a.) All of the improper activities detailed in the consent agreement and stipulation of findings, save one, occurred prior to McIntire's September 25, 2006 written warning.[5]

Based on the consent agreement, the State Ethics Commission issued a final adjudication and order on April 28, 2008.

---

2. Bornstein became Health Officer of South Connellsville on May 2, 1994. (Reproduced Record (R.R.) at 272a.) Bornstein became Health Officer of Dunbar on March 18, 2002. (*Id.*) Bornstein became Health Officer of Monongahela on April 3, 2006. (*Id.* at 273a.)

3. McIntire also served as a member on the City Council. (R.R. at 109a.)

4. McIntire neither requested the State Ethics Commission to investigate Bornstein nor par-

ticipated in the State Ethics Commission's investigation. (R.R. at 118a.)

5. On October 31, 2006, Bornstein used the City's fax machine to send a message to South Connellsville's Mayor. (R.R. at 282a.) The message, which was written on City letterhead, related to Bornstein's duties as Health Officer of South Connellsville. (*Id.*)

(*Id.* at 225a–53a.) The State Ethics Commission concluded that Bornstein violated Section 1103(a) of the Ethics Act, 65 Pa. C.S. § 1103(a), "when she utilized her office, including equipment and materials, in support of her part-time positions as Health Code Officer for [South Connellsville] and [Dunbar]" and "when she performed duties related to her part-time positions with South Connellsville and Dunbar during the same hours for which she was being compensated as an employee of the City." (*Id.* at 253a.) The State Ethics Commission also concluded that Bornstein violated Section 1104(a) of the Ethics Act, 65 Pa.C.S. § 1104(a), "when she failed to file Statements of Financial Interests for the 2001, 2002, 2003, 2004, and 2005 calendar years in her public positions with South Connellsville and Dunbar and ... for the 2002, 2003, 2004, and 2005 calendar years in her public position with the City." (*Id.*) As a result of her violations of the Ethics Act, the State Ethics Commission ordered Bornstein to pay $2,928.37, per the consent agreement, and directed Bornstein to file statements of financial interests for the years that

she had failed to do so. (*Id.* at 254a.) The State Ethics Commission neither initiated nor recommended the initiation of any criminal charges. Bornstein did not appeal.

In June 2008, the City's Mayor advised McIntire of the State Ethics Commission's April 28, 2008 final adjudication and order. On the advice of the City's Solicitor, McIntire issued a letter on July 9, 2008, discharging Bornstein from her position as the City's Health Officer. (*Id.* at 9a.) Subsequently, the City's Solicitor informed McIntire that he discharged Bornstein without following the proper procedures, prompting McIntire to issue a second letter on July 11, 2008, which provided:

Be advised that your discharge as Health Officer for the City of Connellsville has been suspended pending a hearing before the City Council pursuant to Section 4408 of the Third Class City Code [ (Code) ].[6] You will be notified in writing of the date and time of the hearing. You are to resume your duties on Monday July, 14, 2007 follow-

6. Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 39408. Section 4808 of the Code provides, in pertinent part:

All employes subject to civil service shall be subject to suspension by the director of the department for misconduct, or violation of any law of this Commonwealth, any ordinance of the city, or regulation of the department, pending action by the city council upon the charges made against any of such employes. On hearing before the city council, where they may be represented by counsel, they may be fined or suspended for a period not exceeding thirty days with or without pay, or they may be discharged by city council, if found guilty of the charges made against them. The director of each such department may, for misconduct or violation as aforesaid, suspend any employe of such department for a period of ten days, with or without pay, without preferring charges and without a hearing of council; but no employe shall be suspended more

than one time for the identical or same violation or act of misconduct. . . .

Any civil service employe aggrieved by the action of the council in fining, suspending or discharging him shall have the right to appeal by petition to the court of common pleas within thirty days after the suspension or after receipt of written notice of such action by council which it shall be the duty of the council to give and the court shall hear the charges made against him de novo. The issue before the court shall be whether the action of the council shall be affirmed or be modified in any respect or whether the charges should be dismissed or whether the suspension made by the director shall be affirmed or rescinded. Where any such employe has been suspended and the charges are dismissed or the suspension rescinded on appeal, he shall receive full compensation for the entire period of suspension.

ing your requested three day vacation leave.

(R.R. at 10a.)

■ On Friday, August 15, 2008, at approximately 4:15 p.m., Bornstein received a letter from McIntire, dated August 14, 2008, informing her that the hearing referenced in the July 11, 2008 letter had been scheduled for Wednesday, August 20, 2008. That letter provided:

> As a result of the Pennsylvania Ethics Commission adjudication as set forth in its Order Number 1463 dated April 28, 2008, which order has not been appealed, a hearing pursuant to Section 4808 of the Third Class City Code to determine what disciplinary action, if any, the City Council sitting as a Civil Service Board, shall take against you in your capacity as health officer. The hearing is set for Wednesday, August 20, 2008, at 7:00 P.M. at the City Council Chambers in City Hall, 110 North Arch Street, Connellsville, PA. You may be represented by an attorney of your choice should you so desire.

(*Id.* at 11 a.)

As scheduled, Bornstein appeared at a hearing on August 20, 2008.[7] Contrary to the August 14, 2008 letter, however, the City Council did not sit as a Civil Service Board. Instead, Bornstein appeared before the City Council, which consisted of four members, including McIntire, and the City's Mayor. The City's Solicitor was not present at the hearing, and independent counsel acted as hearing officer. (*Id.* at 152a, 198a–99a.) Bornstein, who was not represented by counsel, testified on her own behalf. Bornstein did not request a continuance. (*Id.* at 157a, 169a.) After hearing testimony, the City Council con-

vened an executive session closed to the public. The City Council emerged shortly thereafter and announced that they had voted to terminate Bornstein's employment as the City's Health Officer by a count of three-to-two. (*Id.* at 136a, 201a.) McIntire and the City's Mayor were two of the three votes in favor of termination. (*Id.*)

By letter dated August 21, 2008, McIntire advised Bornstein that she was being discharged from her position as the City's Health Officer as a result of the August 20, 2008 hearing before the City Council. (*Id.* at 12a.) McIntire further advised Bornstein that, pursuant to Section 4408 of the Code, she had a right to appeal the City Council's decision to the trial court within 30 days. (*Id.*)

Concerned with the legality of Bornstein's discharge, the City Council passed Resolution No. 10–20–08 at a duly advertised public meeting held on October 16, 2008, formally ratifying its decision to terminate Bornstein. Resolution No. 10–20–08 provides:

> To ratify the discharge of Rita Bornstein from the positions of Health Officer, Code Officer and Zoning Officer, and to rectify any procedural errors, including any failure to comply with the provisions of the Sunshine Law, related to those actions. Rita Bornstein is discharged from the Health Officer position effective August 20, 2008, from the Code Officer position effective July 9, 2008, and from the Zoning Officer position effective October 16, 2008. The employment dismissal is a result of the Pennsylvanian [sic] Ethics Commission adjudication as set forth in Order Number 1463 dated April 28, 2008.

---

7. The City Council made a recording of the August 20, 2008 hearing; however, a transcript of that proceeding was not provided to the trial court and is not part of the original record in this matter. (R.R. at 108a, 112a, 189a.)

(*Id.* at 261 a.) By letter dated October 20, 2008, the City's Clerk, Antoinette Tesauro (Tesauro), advised Bornstein of the passage of Resolution No. 10–20–08. (*Id.* at 263a.)

On September 19, 2008, Bornstein appealed the City Council's decision to the trial court. Bornstein argued, *inter alia,* that the City Council violated her procedural due process rights. Specifically, Bornstein contended that notice of the August 20, 2008 hearing was inadequate because the August 14, 2008 letter did not state with adequate specificity the charges that the City Council would be considering, did not give Bornstein sufficient time to secure legal counsel and prepare an adequate defense, and erroneously provided that the City Council would be sitting as a Civil Service Board. Bornstein further argued that McIntire's participation at the August 20, 2008 hearing constituted an unlawful commingling of prosecutorial and adjudicatory functions. The trial court held a *de novo* hearing on March 30, 2010, where the parties presented, *inter alia,* the testimony of Bornstein, McIntire, Tesauro, and City Councilman Charles Matthews (Matthews).[8]

By order dated January 19, 2011, the trial court affirmed the City Council's termination of Bornstein, concluding that there was substantial evidence to support the City Council's exercise of discretion based on the State Ethics Commission's April 28, 2008 final adjudication and order.

As for Bornstein's due process arguments, the trial court determined that there was no unlawful commingling of prosecutorial and adjudicatory functions because the City Council based its decision to terminate Bornstein entirely on the State Ethics Commission's April 28, 2008 final adjudication and order, and neither McIntire, nor any other member of the City Council, participated in the State Ethics Commission's investigation. The trial court further determined that Bornstein had adequate notice of the charges that the City Council would be considering at the August 20, 2008 hearing because the August 14, 2008 letter specifically referred to the State Ethics Commission's April 28, 2008 final adjudication and order. Finally, with regard to the timing of the notice, the trial court determined:

> Counsel for Bornstein has submitted no authority that provides for any specific length of time that notice must be provided in advance of a hearing. Bornstein had several days advance notice of the specific hearing date, had several months of notice as to the issues that would be addressed at the hearing, did nothing to secure counsel in those intervening months, appeared at the hearing herself, and did not request a continuance to secure counsel or for any other purpose. She had actual notice and an opportunity to present evidence on her own behalf at the hearing. She did

**8.** This Court discussed a trial court's *de novo* review under Section 4808 of the Code in *City of Harrisburg v. Pickles,* 89 Pa.Cmwlth. 156, 492 A.2d 90 (1985). We stated:
The trial court correctly noted that its de novo review, conducted pursuant to Section 4408 of the [Code], is a limited one. Although the court of common pleas conducts a hearing de novo the court may not substitute its discretion for that of city council if the evidence produced at the hearing in the court below supports the discretion exer-

cised by the council; the court may not interfere with the council's decision unless council has flagrantly abused its discretion or violated the law; unless the evidence be such that if the case were being tried by a jury the court would be required to enter a nonsuit or a judgment n.o.v. the court is required to affirm the findings of city council even though the court as an independent factfinding body might conclude otherwise. *Id.* at 94 (footnotes and quotations omitted).

argue her cause, although she did not contradict the State Ethics Commission Adjudication that was the primary evidence against her.

Because the alleged violation of "procedural due process" is not more specifically set forth, this Court is unable to address the alleged error any further. (Trial Court 1925 Opinion at 3.) This appeal followed.

On appeal,[9] Bornstein argues that the City Council violated her procedural due process rights by failing to give her adequate notice of the August 20, 2008 hearing. Specifically, Bornstein contends: (1) the August 14, 2008 letter did not adequately specify that charges that the City Council would be considering; (2) the August 14, 2008 letter did not give her sufficient time to secure legal counsel and prepare an adequate defense; and (3) the August 14, 2008 letter erroneously provided that the City Council would be sitting as a Civil Service Board. Bornstein also argues that the City Council violated her procedural due process rights because McIntire's participation at the August 20, 2008 hearing constituted an impermissible commingling of prosecutorial and adjudicatory functions, thereby creating an unconstitutional appearance of bias.

 While incapable of exact definition, the essential elements of procedural due process are "notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause." *Fiore v. Bd. of Fin. & Revenue*, 534 Pa. 511, 517, 633 A.2d 1111, 1114 (1993) (quotations omitted). Whether due process has been afforded must be examined in relation to the particular circumstances of each case. *Dunn v. Dep't of*

Transp., Bureau of Driver Licensing, 819 A.2d 189, 192 (Pa.Cmwlth.2003). "Notice is the most basic requirement of due process. . . . Notice should be reasonably calculated to inform interested parties of the pending action. . . . The form of the notice required depends on what is reasonable, considering the interests at stake and the burdens of providing notice." *Pa. Coal Mining Ass'n v. Ins. Dep't*, 471 Pa. 437, 452–53, 370 A.2d 685, 692–93 (1977). "Failure to provide adequate notice is a jurisdictional defect that invalidates administrative action until the defect is cured." *Clark v. Dep't of Pub. Welfare*, 58 Pa.Cmwlth. 142, 427 A.2d 712, 713 (1981); *see also* 2 Pa.C.S. § 553 ("No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.").

We address, first, Bornstein's argument that the City Council denied her due process because the August 14, 2008 letter failed to state with adequate specificity the charges that the City Council would be considering at the August 20, 2008 hearing. "Adequate notice for procedural due process requires, at a minimum, that the notice contain a sufficient listing and explanation of the charges against a person, so that he or she may prepare an adequate defense." *LT Int'l Beauty Sch. v. Bureau of Prof'l & Occupational Affairs*, 13 A.3d 1004, 1013 (Pa.Cmwlth.2011). Here, the August 14, 2008 letter informed Bornstein that the City Council scheduled the August 20, 2008 hearing "[a]s a result of the Pennsylvania Ethics Commission adjudication as set forth in its Order Number 1463 dated April 28, 2008, which order has not been appealed." (R.R. at 11a.) Bornstein contends that merely referencing the State Ethics Commission's adjudication was in-

---

9. This Court's standard of review is limited to determining whether the trial court abused its discretion, committed an error of law, or violated constitutional rights. 2 Pa.C.S. § 754.

sufficient to provide her with adequate notice, and that due process required the August 14, 2008 letter to set forth the specific factual allegations contained in the State Ethics Commission's adjudication upon which the City Council was relying.

In support of her argument, Bornstein cites this Court's opinion in *City of Harrisburg v. Pickles*, 89 Pa.Cmwlth. 156, 492 A.2d 90 (1985). There, a city council sent a letter to a police officer informing him that he was being charged with violating three sections of the police department's disciplinary code. The police officer argued that the notice of charges failed to comport with procedural due process because it merely recited the relevant sections of the disciplinary code without providing the factual allegations upon which the charges were based. In determining that the city council failed to provide the police officer with adequate notice, we reasoned:

> For guidance in determining what type of notice should be afforded a discharged civil servant, we look to civil service law. In *Wood v. Department of Public Welfare*, 49 Pa.Cmwlth. 383, 411 A.2d 281 (1980) this Court held that a removal notice which gave as the reason for the personnel action "continued unsatisfactory work performance" was insufficient to demonstrate compliance with a State Civil Service Commission regulation requiring and adequate explanation for the removal of a regular status employee. In *Wood*, we recognized that while a "removal notice need not be drafted with the certainty of a bill of indictment," it must "be framed in a manner which enables the employee to discern the nature of the charges and adequately to prepare a defense." *Id.* at 396, 411 A.2d at 283. Although the City is not subject to State Civil Service Commission regulations, it, too, must provide adequate due process notice.

> The charges in the March 17, 1983 letter apprise Officer Pickles of virtually nothing. The first two charges in particular provide Pickles with no more information than that given to the employee in *Wood.* Certainly a defense could not be adequately prepared based upon such scant information.

*Pickles*, 492 A.2d at 94–95.

Bornstein's reliance on *Pickles* is misplaced. Unlike *Pickles*, where the notice merely set forth the relevant sections of the Harrisburg Police Bureau's disciplinary code without providing any factual basis for the charges, the August 14, 2008 letter specifically referenced the April 28, 2008 State Ethics Commission's final adjudication and order, which itself contains an extensive explanation of Bornstein's proscribed conduct. This case is more akin to *Davis v. City of Connellsville*, 49 Pa. Cmwlth. 106, 410 A.2d 937 (1980). There, the Pennsylvania State Police filed criminal charges of burglary, robbery, and criminal conspiracy against two City police officers. As a result, the City's then-Mayor sent a letter, which specifically referenced the state police charges, informing the police officers that they were being suspended indefinitely pending a hearing before the City Council. Thereafter, the City's then-Solicitor sent another letter, which provided a more detailed specification of the state police charges, informing the police officers of the hearing date before the City Council. Rejecting the police officers? argument that the City Council did not give them sufficient notice of the charges it would be considering at the hearing, this Court stated:

> The mayor's suspension notices clearly incorporated the criminal law violations by referring to the state police charges before the named magistrate, and the specific notice of hearing by the solicitor,

one month before the hearing date, contained a completely detailed specification, so that no procedural defect appears in that respect.

*Davis*, 410 A.2d at 939. Accordingly, because the August 14, 2008 letter incorporated by reference the State Ethics Commission's April 28, 2008 final adjudication and order, the City Council provided Bornstein with adequate notice of the charges it would be considering at the August 20, 2008 hearing.[10]

■ We address, next, Bornstein's argument that the City Council denied her due process by not giving her sufficiently advanced notice of the August 20, 2008 hearing. Specifically, Bornstein contends that notice of the August 20, 2008 hearing was inadequate because the August 14, 2008 letter did not afford her a reasonable amount of time to secure legal counsel and prepare an adequate defense. Based on the particular circumstances of this case, we agree.

■ Procedural due process requires that notice be given sufficiently in advance

of a hearing to allow a party to prepare an adequate defense. *See Snyder v. Dep't of Transp., Bureau of Motor Vehicles*, 977 A.2d 55, 57 (Pa.Cmwlth.2009); *Murray v. Jacobs*, 99 Pa.Cmwlth. 39, 512 A.2d 785, 789–90 (1986). While there is no statutory or regulatory provision setting forth the period of advanced notice required for a hearing held pursuant to Section 4408 of the Code, like we did in *Pickles*, we look here to state civil service law for guidance in determining what notice should be afforded a discharged civil servant. Section 950 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, added by the Act of August 27, 1963, P.L. 1257, *as amended*, 71 P.S. § 741.950, provides, in pertinent part: "Written notice of any personnel action taken pursuant to the provisions of this act shall be provided to the affected employe. Such notice shall be furnished within time limits prescribed by the rules of the [State Civil Service C]ommission." In turn, the regulation found at 4 Pa.Code § 105.11 provides, in pertinent part: "*At least 10 working days notice* in advance of the date of the hearing shall be tendered

---

**10.** Bornstein also cites *Pickles* for the proposition that the State Ethics Commission's April 28, 2008 final adjudication and order is irrelevant in determining whether the City Council gave Bornstein adequate notice of the charges against her. Again, Bornstein's reliance on *Pickles* is misplaced. In *Pickles*, the same conduct that placed the police officer before the city council also placed the police officer before the Firearms Review Board (FRB) and Disciplinary Review Board (DRB). The city council argued that the police officer was not denied procedural due process, notwithstanding the inadequacy of the notice of charges, because the proceedings before the FRB and DRB provided the police officer with an explanation of the charges against him. Determining that the proceedings before the FRB and the DRB could not rectify the city council's failure to provide the police officer with adequate notice, this Court stated:

[W]e agree with the trial court that the fact that Officer Pickles was informed of the

charges in connection with proceedings before the [FRB] and the [DRB] is irrelevant. As the trial court wrote, "the accused was entitled to know what charges City Council would be weighing, not some prior Board." *Pickles*, 492 A.2d at 95 (footnote omitted). Importantly, unlike the present matter, where the City Council specifically referenced the State Ethics Commission's adjudication in the August 14, 2008 letter, the city council in *Pickles* made absolutely no reference to the proceedings before the FRB and the DRB in the notice of charges. Had the city council done so, this Court may have decided *Pickles* differently. Instead, the police officer in *Pickles* could only speculate as to whether he would face the same charges before the city council as he did before the FRB and the DRB. Accordingly, the State Ethics Commission's April 28, 2008 final adjudication and order is not irrelevant in determining whether the City Council gave Bornstein adequate notice.

in writing to the employee affected . . ., informing them of the date, time and place of hearing." (Emphasis added.) "Although the City is not subject to State Civil Service Commission regulations, it, too, must provide adequate due process notice." *Pickles,* 492 A.2d at 95.

Here, Bornstein received the August 14, 2008 letter on Friday, August 15, 2008, at approximately 4:15 p.m.—less than three business days' prior to the August 20, 2008 hearing.[11] The City Council, therefore, provided Bornstein with less than a third of the minimum amount of advanced notice that a state civil servant would have been entitled. Bornstein testified before the trial court that she wanted to be represented by an attorney at the August 20, 2008 hearing, but that she was unable to retain one in such a short time period. (R.R. at 168a.) Bornstein explained that she contacted the attorney that represented her before the State Ethics Commission, but that he was out of town. (*Id.* at 168a–69a.) Bornstein further explained that she contacted other attorneys, "but they told [her] that they didn't have enough time and there was nothing here. They didn't know what it was about." (*Id.* at 168a.) The City Council has not provided any explanation for why it did not give Bornstein notice sooner. While we do not go so far as to hold that due process required the City Council to provide Bornstein with "[a]t least 10 working days notice," 4 Pa.Code § 105.11, the timing of the notice in this case was plainly inadequate, especially when considering the substantial property interest at stake and the relatively minor burdens of providing notice. Accordingly, because Bornstein was not afforded sufficient time to secure legal counsel and prepare an adequate defense, notice of the August 20, 2008 hearing failed to satisfy due process.[12,13]

---

11. We reject the trial court's determination that Bornstein had "several months of notice" to secure counsel and prepare her defense. (Trial Court 1925 Opinion at 3.) Although the July 11, 2008 letter informed Bornstein that her termination was being suspended "pending a hearing" before the City Council, it was not until Bornstein received the August 14, 2008 letter on August 15, 2008, that Bornstein was informed of the date of the hearing and the charges against her. Accordingly, the August 14, 2008 letter is the only document relevant to determining whether Bornstein received notice sufficiently in advance of the August 20, 2008 hearing.

12. The City argues that Bornstein waived her right to have an attorney present at the August 20, 2008 hearing by failing to request a continuance. "Waiver is the knowing relinquishment or abandonment of a right." *Bosnjak v. State Civil Serv. Comm'n,* 781 A.2d 1280, 1285 (Pa.Cmwlth.2001). Accordingly, in order for Bornstein to have waived her right to have an attorney present by failing to request a continuance, Bornstein must have *known* of her right to have an attorney present *and* of her right to request a continuance.

Bornstein testified before the trial court that she did not request a continuance at the August 20, 2008 hearing because she did not know she had a right to do so. (R.R. at 169a.) Acknowledging Bornstein's testimony, the City nevertheless contends that Bornstein knew she had a right to request a continuance to retain an attorney because the August 14, 2008 letter provided: "You may be represented by an attorney of your choice should you so desire." (*Id.* at 11 a.) We fail to see how advising Bornstein of her right to be represented by an attorney adequately conveyed to Bornstein that she also had a right to request a continuance in order to retain an attorney. Accordingly, we refuse to find waiver, especially where, as here, Bornstein's ignorance of her rights was directly attributable to the City Council's failure to afford her sufficient time to retain an attorney to advise her of her rights.

13. The City also argues that Bornstein was not denied due process because she did not suffer any prejudice from not having an attorney present at the August 20, 2008 hearing. *See In re McGlynn,* 974 A.2d 525, 532 (Pa. Cmwlth.2009) ("Demonstrable prejudice is a

Having determined that the City Council violated Bornstein's due process rights by failing to give her notice sufficiently in advance of the August 20, 2008 hearing, we must reverse and remand to the trial court with instructions to remand to the City Council for a new hearing. Because the City acknowledges that the August 14, 2008 letter erroneously provided that the City Council would be sitting as a Civil Service Board, we need not determine whether this error constituted a violation of due process, as we expect that it will not be repeated on remand. It is necessary, however, for this Court to address Bornstein's final argument.

Bornstein argues, last, that the City Council denied her due process because McIntire's participation at the August 20, 2008 hearing constituted an impermissible commingling of prosecutorial and adjudicatory functions, thereby creating an unconstitutional appearance of bias. Specifically, Bornstein contends that McIntire's inclusion on the City Council at the August 20, 2008 hearing constitutes impermissible commingling because McIntire was also responsible for initiating the proceedings against her—as evidenced by the July 9, 2008 termination letter and July 11, 2008 reinstatement letter. In so arguing, Bornstein maintains that the trial court erred in focusing on whether McIntire participated in the State Ethics Commission investigation instead of whether McIntire initiated the proceedings *before*

*the City Council.* In support of her argument, Bornstein relies primarily on our Supreme Court's opinion in *Lyness v. State Board of Medicine,* 529 Pa. 535, 605 A.2d 1204 (1992). While we agree that McIntire's non-involvement in the State Ethics Commission investigation is not dispositive, we disagree that *Lyness* directs the outcome of this case.

In *Lyness,* the State Board of Medicine (Board), acting on the request of its prosecuting attorney, convened to determine whether sufficient evidence existed to initiate disciplinary action against a physician accused of sexual misconduct. Deciding to proceed against the physician, the Board's prosecutor lodged formal charges and the Board appointed a neutral hearing examiner. Following hearings, the hearing examiner recommended that the physician's license be suspended for five years. Subsequently, the Board, with many of the same members participating, reviewed the hearing examiner's recommendation and decided, instead, to permanently revoke the physician's license. Our Supreme Court held that, in both making the decision to initiate the prosecution against the physician *and* acting as the ultimate factfinder in determining whether the physician committed a violation, the Board had violated the physician's due process right to a fair and impartial tribunal by impermissibly commingling its prosecutorial and adjudicatory functions. Our Supreme Court reasoned:

key factor in assessing whether procedural due process was denied.") Specifically, the City contends that because Bornstein was represented by an attorney before the trial court and failed to present any evidence to counter the State Ethics Commission's April 28, 2008 final adjudication and order, it is reasonable to assume that, even if Bornstein had been represented by an attorney at the August 20, 2008 hearing, she still would not have presented evidence to counter the State Ethics Commission's adjudication. We refuse to

view Bornstein's defense tactics before the trial court as an indicator of how Bornstein would have proceeded before the City Council had she been represented by an attorney. Importantly, the proceedings before the trial court were not the equivalent of a new hearing. Although the trial court sat *de novo,* allowing the parties to present evidence, Section 4408 of the Code required the trial court to defer to the City Council's decision if supported by substantial evidence. *See supra* n. 7.

There is a strong presumption under Pennsylvania law that even an *appearance* of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen.... "[A]ctual bias" [is] not the watchword in ferreting out violations of due process under the Pennsylvania Constitution....

... [T]he over-lap of prosecutorial and adjudicatory functions, even where not complete, [is] anathema to the notion of due process in Pennsylvania, where citizens presume that the same individual does not wear the mantel of zealous prosecutor and impartial judge....

....

Thus, a mere possibility of bias under Pennsylvania law is sufficient to raise the red flag of protection offered by the procedural guaranty of due process.

....

... [I]f more than one function is reposed in a single administrative entity, walls of division must be constructed which eliminate the threat or appearance of bias.... [A] "mere tangential involvement" of an adjudicator in the decision to initiate proceeding is not enough to raise the red flag of procedural due process. Our constitutional notion of due process does not require a *tabula rasa.* However, where the very entity or individuals involved in the decision to prosecute are "significantly involved" in the adjudicatory phase of the proceedings, a violation of due process occurs. Such a conclusion is only made more compelling where, as here, the administrative Board has virtual *carte blanche* in reviewing the Hearing Examiner's findings and replacing it with its own adjudication, with very limited appellate review in the Commonwealth Court.

....

Whether or not any actual bias existed as a result of the Board acting as both prosecutor and judge is inconsequential; the potential for bias and the appearance of non-objectivity is sufficient to create a fatal defect under the Pennsylvania Constitution.... Under the instant scheme, ... [t]he accused is forced to face the same body which heard allegations and formed prosecutorial judgments concerning probable cause (some of it perhaps inadmissible as formal evidence), now dressed in the robe of impartial jurist. Such a schizophrenic face of justice, poses subtle dangers which threaten complete objectivity and is not permissible under the due process guaranty of the Pennsylvania Constitution.

*Id.* at 542–49, 605 A.2d at 1207–11 (citations omitted) (emphasis in original).

Later, in *Stone and Edwards Insurance Agency, Inc. v. Department of Insurance,* 538 Pa. 276, 648 A.2d 304 (1994), our Supreme Court clarified its holding in *Lyness.* There, pointing out that the relevant statutory and regulatory provisions vested the Insurance Commissioner with both prosecutorial and adjudicatory authority over insurance law violations, the appellants, citing *Lyness,* argued that, regardless of the procedures actually used by the Insurance Department, the mere " 'potential' " for impermissible commingling constituted an unconstitutional deprivation of due process. *Id.* at 281, 648 A.2d at 307. Rejecting the appellants' interpretation of *Lyness,* our Supreme Court explained that "the form of impermissible 'appearance' of bias and partiality proscribed in *Lyness* must clearly be one that arises from an *actual* environment of commingled functions." *Id.* at 281–82, 648 A.2d at 307 (emphasis in original). The focus must be "the nature of the process *actually* provided." *Id.* at 282, 648 A.2d at

307 (emphasis in original). "In the absence of any actual commingling, ... due process guarantees are being adequately protected." *Id.* at 283, 648 A.2d at 308.

Since our Supreme Court's decisions in *Lyness* and *Stone*, however, this Court has distinguished cases involving independent administrative agencies, acting as regulators, from cases involving school boards acting as employers. *See Harmon v. Mifflin Cnty. Sch. Dist.*, 651 A.2d 681 (Pa. Cmwlth.1994); *see also Behm v. Wilmington Area Sch. Dist.*, 996 A.2d 60 (Pa. Cmwlth.2010), *appeal denied*, —— Pa. ——, 23 A.3d 1057 (2011) (holding that *Lyness* does not apply to residency proceedings before school board). In *Harmon*, we spoke of a "continuum" of due process rights, recognizing that the type of due process protections needed is dependent upon the particular circumstances of each individual case. *Harmon*, 651 A.2d at 685–86. There, a school board terminated a custodian for violating school rules. At the hearing before the school board, the school district's solicitor, who was present at the meeting when the school board decided to terminate the custodian, prosecuted the case on behalf of the school district administration, while another attorney conducted the hearing and advised the school board. After the school board upheld its termination, the custodian appealed to the trial court, arguing, *inter alia*, that the school board violated his due process rights by allowing the solicitor to act as prosecutor. Despite this Court's cases holding that there is no impermissible commingling "when a solicitor either prosecutes a case or conducts the hearing as an advisor to the school board but not both," *id.* at 684, the trial court reversed, determining that the solicitor's prosecution of the case created an appearance of impropriety because of the solicitor's on-going relationship with the school district and the school board. The trial court also

determined that the school board impermissibly commingled prosecutorial and adjudicatory functions by both making the initial decision to terminate the custodian and hearing the custodian's challenge to the termination. We rejected both of the trial court's holdings, reasoning:

> The existence of a continuing relationship between the solicitor and the school board does not create the appearance of impropriety at the hearing or during the school board's deliberations on the termination where, as here, the Solicitor does not act on behalf of the School Board at the hearing by either advising them or ruling on objections or evidentiary questions and does not advise them during those deliberations. *Lyness* would be applicable, for example, if the Solicitor, unlike here, had been present with the School Board members while they made their decision on the termination and no actual bias would have to be shown in that situation.

Moreover, we do not believe *Lyness* is applicable to this case because Section 514 of the Public School Code requires that the school board, as the employer, dismiss employees and then is required to hear the challenge to the dismissal. While *Lyness* required that there be a "wall of separation" between those preferring the charges and those adjudicating the charges in an agency, that does not mean that complete separation has to be observed in every case for due process requirements to be met. The process that is due a person does not always require a trial-type hearing or the complete separation of functions that take place in a judicial proceeding. The type of due process that is required is dependent upon the forum, the relationship of the parties, the interests at stake and should be consistent with the goal of

reducing the risk of arbitrary government action.

*Id.* at 685 (citations omitted).

Furthermore, we clarified that the *Lyness* principles apply to agencies that "generally have the power to set criteria for licensure and to regulate those practicing in the area and are required to impose discipline or revoke licenses for those who violate the regulations." *Id.* at 686. Because hearings before these types of agencies may result in one's inability to practice their profession anywhere due to license revocation, and because the individual does not have an ongoing relationship with the board, "the proceedings have been held to be one in which a party can expect that the person or persons deciding the case have not taken part in the action to prosecute him or her." *Id.* Our Supreme Court, however, has recognized that "a person being disciplined by his employer has no such right." *Id.* In *Harmon*, we explained:

> Unlike those engaged in a profession requiring a license, a public employee absent legislation or contract is an employee at will, with no right to continue in employment, and has no due process rights to a hearing before being discharged. In Section 514 of the Public School Code, the General Assembly gave school employees rights not protected by either the state or federal constitution by restricting the school board's unfettered right to terminate without showing just cause and by giving the employee a "protected right" to a hearing on request on whether there is just cause. If just cause exists, then it is within the school board's discretion, like all employers, to terminate an employee if it is in its best interest to do so. Additionally, in light of the continuum of what process is due, the school board's hearing allows them to determine if the

termination is correct in light of the testimony and evidence presented by the employee at the hearing (and that decision is ultimately subject to judicial review), thereby satisfactorily ensuring against the risk of arbitrary action. Moreover, unlike a licensing board, when an employee is terminated, it does not prevent him from working, only from working for that employer. Even though Section 514 requires a school board to terminate an employee and hear the challenge to that termination, *Lyness* simply doesn't apply because the "interests" involved in the employment relationships are totally different than an independent agency actions [sic] regulating individuals.

> We have recognized this distinction and determined that the same type of due process requirements do not apply to school boards as they do to other independent administrative agencies. . . .

> Because *Lyness* involves a type of independent agency established to investigate, prosecute and adjudicate persons with professional licenses, it is distinguishable from, as here, a school board acting not as a regulator but as an employer. Consequently, our prior case law, holding that it is not an impermissible commingling of prosecutorial and adjudicatory functions when a solicitor acts as a prosecutor in the hearing but does not advise the school board during the hearing or in its decisional process, is not affected by *Lyness*.

*Id.* at 686–87 (footnotes and citations omitted). Accordingly, under *Harmon*, while the commingling of prosecutorial and adjudicatory functions can still constitute a due process violation, the separation between the two functions, on the continuum of due process, need not be nearly as distinct where a school board is acting as an employer, as opposed to where an indepen-

dent administrative agency is acting as a regulator.

Although factually distinguishable, *Harmon's* reasoning and holding are equally applicable to the present matter. Similar to the school board in *Harmon*, the City Council in this case is a local agency acting as an employer, not an independent administrative agency acting as a regulator. The fact that *Harmon* involved a school board, and not a city council, is not dispositive. Importantly, this Court in *Harmon* expressly rejected our decision in *Copeland v. Township of Newtown*, 147 Pa. Cmwlth. 463, 608 A.2d 601 (1992), a case involving a township board of supervisors, to the extent that it applied *Lyness* to an employment relationship. *Id.* at 686 n. 7. Accordingly, we hold that the strictness of *Lyness* is inapplicable here. As a result, we look elsewhere to determine whether McIntire's participation at the August 20, 2008 hearing constituted an impermissible commingling of prosecutorial and adjudicatory functions.

■ In *Scalzi v. City of Altoona*, 111 Pa.Cmwlth. 479, 533 A.2d 1150 (1987), *appeal denied*, 520 Pa. 592, 551 A.2d 218 (1988), a city council terminated a police officer for violating certain police department regulations. On appeal to this Court, the police officer argued that the mayor's participation as council chairman at his disciplinary hearing constituted an impermissible commingling of prosecutorial and adjudicatory functions because the mayor had preferred the charges against him and reviewed testimony prior to the hearing. In determining whether the mayor's participation as an adjudicator was constitutionally prohibited, this Court reviewed the relevant cases and gleaned the following principles:

1. An individual or Board may conduct a general probable cause investigation and still adjudicate the case.

2. An individual may as a *pro forma* matter sign a suspension or removal letter and still adjudicate the case.

3. An individual may prepare charges and still adjudicate the case.

4. An individual may not prefer charges or actively participate in the investigation and still adjudicate the case.

*Id.* at 1153. Finding that the mayor's actions were prohibited by the fourth category, we explained:

This last fact pattern is impermissible, because preferring of charges by one vested with discretion to determine if such charges should be filed necessarily requires a commitment to the position that the individual is guilty. Once that position is taken by the prosecutor, the chance that that individual can then assess the evidence impartially is too remote.

*Id.* Accordingly, under *Scalzi*, a key to determining whether there has been impermissible commingling is whether the individual's involvement during the prosecutorial portion of the proceedings was such that he became committed to the position that the defendant was guilty.

In *Appeal of Redo*, 42 Pa.Cmwlth. 468, 401 A.2d 394 (1979), a township board of supervisors terminated a police officer based on charges preferred by the township's police chief. On appeal to this Court, the police officer argued, *inter alia*, that the board impermissibly commingled prosecutorial and adjudicatory functions because the board was thoroughly familiar with the case before the hearing. In so arguing, the police officer pointed out that one of the three board members signed a letter informing him of his suspension and a different board member signed a letter notifying him of his dismissal. Finding that the board members' actions did not

violate the police officer's due process rights, we reasoned:

> At the hearing [before the trial court], th[e] two [board] members testified that they respectively signed the letters based upon the recommendations of the police chief, who filed the charges, and the township solicitor, who prepared the letters and that therefore *each signature represented only pro forma approval.* They thus inquired into the matter only generally and only enough so that their signatures indicated a determination in the nature of probable cause.

*Id.* at 396 (emphasis added).

The police officer in *Redo* also argued that the board impermissibly commingled functions by allowing the township solicitor, who had counseled the two board members in signing the respective letters, to prosecute the case. Finding that the solicitor's pre-hearing interaction with the two board members did not constitute a due process violation, we stated:

> Whatever due process concerns are raised by the fact that the township solicitor, the prosecuting attorney, may have individually "briefed" two members of the Board as to the charges in order that they had enough information to honestly sign the suspension and termination letters sent to Redo, are certainly cured by the solicitor's rigid disassociation of himself from the case during the hearing and thereafter, and the presence of independent counsel to advise the Board during the hearing and the decision.

*Id.* at 397.

Here, it is undisputed that McIntire acted as an adjudicator at the August 20, 2008 hearing, voting to terminate Bornstein, and that McIntire signed and prepared the July 9, 2008 termination letter and the July 11, 2008 reinstatement letter. Importantly, however, McIntire testified that it was the City's Solicitor who preferred the charges against Bornstein, and that he sent the July 9, 2008 and July 11, 2008 letters at the Solicitor's direction. (R.R. at 121a–22a, 128a, 148a, 152a–55a.) Specifically, McIntire testified that he was first made aware of the State Ethics Commission's April 28, 2008 final adjudication and order by the City's Mayor in June 2008, and that he did not take any action against Bornstein at that time. (*Id.* at 149a–50a, 152a.) McIntire testified that the Solicitor subsequently informed him that Bornstein had to be removed from office due to the nature of the charges contained in the State Ethics Commission's adjudication, and that the Solicitor directed him, as Bornstein's supervisor, to prepare and send the July 9, 2008 termination letter. (*Id.* at 121a–22a, 148a, 152a–55a.) McIntire testified that the Solicitor then called him two days later to inform him that proper procedures were not followed in discharging Bornstein, and that the Solicitor directed him to prepare and send the July 11, 2009 letter reinstating Bornstein pending a hearing. (*Id.* at 128a, 154a.)

McIntire's actions did not constitute an impermissible commingling of prosecutorial and adjudicatory functions. It was the Solicitor, not McIntire, who preferred the charges against Bornstein, and there is not otherwise an indication that McIntire's involvement was such that he was committed to the position that Bornstein was guilty. *See Scalzi*, 533 A.2d at 1153. Similar to *Redo*, McIntire merely sent the July 9, 2008 and July 11, 2008 letters as a *pro forma* matter, acting on the recommendations of the Solicitor. That McIntire personally prepared the letters, as opposed to signing correspondences drafted by the Solicitor, as in *Redo*, is not dispositive. In *Barr v. Pine Township Board of Supervisors*, 20 Pa.Cmwlth. 255, 341 A.2d 581, 582–83 (1975), this

Court held that the preparation of charges, to be distinguished from the filing or preferring of charges, does not prohibit the individual who prepared the charges from adjudicating the case. This case is also similar to *Redo* in that independent counsel advised the City Council during the August 20, 2008 hearing. Unlike *Redo*, however, where the solicitor went on to act as prosecutor, the Solicitor here was not present at the August 20, 2008 hearing, thereby making this Court's holding in *Redo*, that any due process concerns raised by the board members' pre-hearing interaction with the solicitor were cured by the fact that independent counsel advised the board during the hearing and in its decision, even more compelling in the present matter. Surely, the potential for impropriety is diminished where, as here, the Solicitor, who directed McIntire's actions, did not have a role in the August 20, 2008 hearing. Accordingly, McIntire's participation at the August 20, 2008 hearing did not violate Bornstein's due process rights.[14]

Based upon the foregoing opinion, we reverse the order of the trial court and remand for a new hearing.

Judge McCULLOUGH concurs in the result only.

### *ORDER*

AND NOW, this 2nd day of February, 2012, the order of the Court of Common Pleas of Fayette County (trial court), dated January 19, 2011, is hereby REVERSED. This case is remanded to the trial court with instructions to remand to the Connellsville City Council (City Council) for a new hearing.

Jurisdiction relinquished.

---

**14.** Bornstein further contends that McIntire's bias is evidenced by his conduct during the August 20, 2008 hearing and executive session. Specifically, Bornstein argues that McIntire was committed to the position that she was guilty before the hearing. In support of her argument, Bornstein points to the following colloquy from Councilman Matthews' testimony:

Q. Was it your understanding that members of Council had already had their minds made up going into the hearing, sir?

. . . .

Q. Did they ever indicate to you prior to going into the hearing that they already had their minds made up?

A. Only Councilman McIntire with the letter that he had already discharged her once.

(R.R. at 202a.) We cannot accept Bornstein's interpretation. As this line of questioning ceased following the above excerpt, we do not have sufficient context to determine the intent of Matthews' statement. It appears, however, that Matthews was merely reiterating the fact

that McIntire had issued the July 9, 2011 termination letter.

Bornstein also argues that McIntire's bias is evidenced by the fact that he offered evidence against her during the executive session. In support of her argument, Bornstein points to the following colloquy from Matthew's testimony:

Q. Okay. Was it—do you recall any members of City Council testifying at the meeting?

A. Uh, I believe Mr. McIntire referred to the Ethics Report, but I am not even sure of that at this time to be honest with you. (*Id.* 200a.) Again, we must reject Bornstein's argument. Ignoring the obvious uncertainty in Matthews' response, we fail to appreciate how McIntire's reference to the State Ethics Commission's April 28, 2008 final adjudication and order—which served as the entire basis for the charges against Bornstein—was improper. Bornstein has not cited any relevant legal authority in support of her argument.